**NATIONAL EXCESS INSURANCE COMPANY, a California corporation, Plaintiff,**

**v.**

**CIVEROLO, HANSEN & WOLF, P.A., a New Mexico professional corporation and W.R. Logan, Defendants.**

**No. Civ. 89–1079 JC.**

United States District Court, D. New Mexico.

Sept. 26, 1991.

Richard W. Hughes, Rothstein, Bennett, Donatelli, Hughes & Dahlstrom, Santa Fe, N.M., for plaintiff.

William S. Dixon, Charles K. Purcell, Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N.M., for defendants.

## MEMORANDUM OPINION
## AND ORDER

CONWAY, District Judge.

THIS MATTER comes on for consideration of the following motions: 1) Plaintiff's Objections to Magistrate Judge's Order Compelling Production of Documents [1]; 2) Plaintiff's Objection to Magistrate Judge's Order of June 26, 1991 Compelling Production of Documents; and 3) Defendant's Objection to Magistrate Judge's Order of June 26, 1991 Compelling Production of Documents. The Court, having reviewed the memoranda of the parties, having heard oral argument on August 5, 1991, and having reviewed the documents at issue *in camera*, finds that none of the objections is well-taken and each will be denied.

### A. Background

At issue in these objections is the production of 16 documents for which the plaintiff claims attorney-client privilege.[2] The disputed documents are:

1. Letter of July 10, 1989 from Joseph Benero (hereafter "JB") to Franklin Bass (hereafter "FB");
2. Telecopier cover letter of August 14, 1989 from Carolyn Smith, for JB, to FB;
3. Letter of August 24, 1989, from JB to FB;
4. Letter of September 5, 1989, from JB to FB;
5. Letter of September 21, 1989, from FB to Richard Hughes (with enclosure);
6. Letter of September 26, 1989, from FB to JB (with fax cover sheet and enclosures);
7. Letter of July 6, 1989 from FB to JB (with fax cover sheet);
8. Letter of July 19, 1989 from FB to JB;
9. Undated memo to file by JB relating conversation with FB;
10. Letter of August 22, 1989 from FB to JB (with fax cover sheet);
11. Mailed copy of August 22, 1989 letter from FB to JB;
12. Letter of August 23, 1989 from JB to FB;
13. Telecopier cover letter of September 5, 1989, from JB to FB;
14. Letter of September 20, 1989, from FB to JB;
15. Letter of September 21, 1989, from FB to JB;
16. Letter of September 25, 1989, from JB to FB;

On April 4, 1991, the Magistrate Judge ordered the plaintiff to produce 15 of these documents (it is unclear from the pleadings which of these documents was not ordered produced). However, on June 26, 1991, after an *in camera* review of the 19 documents originally at issue, the Magistrate Judge ordered the plaintiff to produce only six of the documents. The plaintiff objects to the orders of April 4, 1989 and June 26, 1991, asserting that all of the documents subject to these orders are protected by the attorney-client privilege. The defendants object to the June 26, 1991 order to the extent that it denies production of nine of the 15 documents originally ordered to be produced, arguing that the plaintiff waived any privilege attaching to these documents when it filed this claim for attorney malpractice.

Under Rule 72(a) of the Federal Rules of Civil Procedure the Court "shall consider objections made by the parties ... and shall modify or set aside any portion of the magistrate's order found to be clearly erroneous or contrary to law." Fed.R.Civ.Pro. 72(a). "The clearly erroneous standard is intended to give the magistrate a free hand in managing discovery issues." R. Marcus & E. Sherman, *Complex Litigation* at 643

---

1. This objection to the Magistrate Judge's April 4, 1991 order was in two parts. The first part, objecting to the order compelling production of documents setting forth the nature of the relationship between six different corporate entities was denied at the August 5, 1991 hearing in this matter; therefore, this memorandum opinion will not further address this issue.

2. Nineteen documents were originally at issue. However, the defendants have abandoned their request for production of communications between plaintiff's local counsel in this litigation (Richard Hughes) and Mr. Benero; therefore, these documents will not be considered in this memorandum opinion.

(1985). The Seventh Circuit has stated that "[t]o be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir.1988).

### B. Analysis

It is necessary for the Court to review briefly the nature of the underlying claim before disposing of the objections now before it. This is a claim for attorney malpractice arising out of the defendants' representation of the plaintiff in what the parties refer to in their pleadings as the *Jessen* case. The *Jessen* case was tried to a jury in New Mexico State District Court in April of 1987. The jury verdict was unfavorable to National Excess. Subsequently, the New Mexico Supreme Court affirmed the jury verdict on June 22, 1989. A petition for rehearing was filed on July 7, 1989, and denied on August 9, 1989. On September 6, 1989, Franklin Bass wrote to defendant Logan on behalf of National Excess, advising him of his opinion that Mr. Logan's handling of the *Jessen* litigation constituted malpractice. On September 7, 1991, the trial court entered a final judgment in the *Jessen* case. On September 26, 1989 the parties to the *Jessen* case signed a Release and Satisfaction of Judgment.

In their Answer to National Excess's Complaint, the defendants interpose the issues of causation, comparative negligence, and reliance, and the affirmative defenses of waiver and estoppel. In essence, these defenses are based on the allegation that Mr. Benero (the plaintiff's president) began seeking legal advice from Mr. Bass—the attorney later hired to oversee National Excess's claim against Civerolo—concerning the *Jessen* case shortly after the jury's July 1987 verdict. The defendants contend that Mr. Benero relied on Mr. Bass in determining how the *Jessen* case would be handled from that date until the matter was officially concluded on September 26, 1989. Civerolo and Logan argue that any communications prior to September 26, 1989 between Mr. Bass and Mr. Benero concerning the *Jessen* case are relevant to their defenses, and thus the plaintiff has waived any claimed attorney-client privilege.

■ There is little law on point. Both parties agree, however, that what there is correctly stands for the proposition that when a client sues his attorney for malpractice, documents that would ordinarily be privileged may lose that status if they are relevant to a claim or any defenses. *See Hearn v. Rhay*, 68 F.R.D. 574, 580 (E.D.Wash.1975) and *Pappas v. Holloway*, 114 Wash.2d 198, 787 P.2d 30, 35 (1990). Nevertheless, the parties disagree about the applicability of this exception to the facts now before the Court.

■ Plaintiff makes two arguments in opposition to application of the waiver doctrine to this case. First, National Excess notes that Mr. Bass was hired to represent National Excess in *this* case, not in the *Jessen* case. Therefore, plaintiff contends, the communications at issue did not occur during the course of the underlying litigation and, under the applicable cases, cannot be discovered. The Court agrees with the proposition that the communications sought must have occurred during the course of the underlying litigation. Otherwise, such communications would not be relevant to the issues of reliance, causation, and comparative negligence, or to the affirmative defenses of waiver and estoppel. But the Court rejects plaintiff's uarticulated contention that communications are discoverable only if the attorney is *hired* to represent the client in the underlying action. The relevance of any advice Mr. Bass gave Mr. Benero concerning the *Jessen* matter before September 26, 1989 does not turn on whether Mr. Bass was actually hired to give such advice. Moreover, the fact that Mr. Bass was hired by National Excess to pursue this malpractice claim does not insulate communications containing advice relevant to the plaintiff's decisions concerning prosecution of the *Jessen* litigation from discovery.

■ Plaintiff's second argument is more persuasive. National Excess asserts

that although the documents at issue were made during the course of the underlying litigation, all of the communications at issue were made *after the acts* on which plaintiff bases its claim for malpractice. Of course, advice received from another attorney sometime after the alleged acts of negligence would not be directly relevant to the issues raised by defendants. Nevertheless, the documents might be construed to bolster oral testimony in support of the defendants' claims that Mr. Bass was acting as a shadow counsel between 1987 and 1989. Furthermore, although the Complaint alleges that all of the acts constituting malpractice occurred prior to the New Mexico Supreme Court's decision affirming the jury verdict, the prayer for relief seeks damages including Civerolo's fees for the entire period of its representation of National Excess, thereby putting in issue the events surrounding the decision to file the petition for rehearing and the eventual termination of the *Jessen* litigation. To at least a limited extent, then, the communications might be relevant to some of the defenses.

As the foregoing discussion reveals, the Magistrate Judge was required to exercise a great deal of discretion when reaching his decision. Given the many factors which the Magistrate Judge was required to balance, it is not unreasonable that he should have at first concluded that all of the documents should be produced and then later reversed himself after inspecting the documents at issue. Had this Court been presented with these issues initially, it might indeed have reached a decision different from the Magistrate Judge's ultimate ruling. Nevertheless, this Court cannot say that either of the Magistrate Judge's rulings at issue in these objections was clearly erroneous or contrary to law. Accordingly, each of these objections will be denied.

Wherefore,

IT IS ORDERED, ADJUDGED AND DECREED:

1. Plaintiff's Objections to Magistrate Judge's Order Compelling Production of Documents be, and hereby is, denied;

2. Plaintiff's Objection to Magistrate Judge's Order of June 26, 1991, Compelling Production of Documents be, and hereby is, denied;

3. Defendants' Objection to Magistrate Judge's Order of June 26, 1991, Compelling Production of Documents be, and hereby is, denied.