FISCHEL AND KAHN, LTD., Plaintiff-Appellee and Counterdefendant-Appellee, v. VAN STRAATEN GALLERY, INC., *et al.*, Defendants-Appellants and Counterplaintiffs-Appellants (William van Straaten *et al.*, Third-Party Plaintiffs-Appellants and Cross-Appellees; Fischel and Kahn, Ltd., *et al.*, Third-Party Defendants-Appellees and Cross-Appellants).

First District (3rd Division)   No. 1—96—2251

Opinion filed October 14, 1998.—Rehearing denied November 23, 1998.—Modified opinion filed December 2, 1998.

Daniel S. Hefter and Martin B. Carroll, both of Hefter & Radke, of Chicago, for appellants.

Hinshaw & Culbertson, of Chicago (Stephen R. Swofford, Thomas P. McGarry, and David M. Schultz, of counsel), for appellees.

PRESIDING JUSTICE LEAVITT delivered the modified opinion of the court on denial of rehearing:

Appellants van Straaten Gallery, Inc., the New van Straaten Gallery, Inc., Seaberg Picture Framing, Inc., Frameway Studios, Inc., and William van Straaten appeal from the trial court's order finding them in contempt for refusing to disclose certain documents to appellees Fischel & Kahn, Ltd., and Joel Fenchel (Fischel & Kahn). On appeal, appellants claim the challenged documents are privileged and deny either the attorney-client or work product privilege was waived in this case.

The van Straaten Gallery and the New van Straaten Gallery are Illinois corporations engaged in the art gallery business in Chicago. Frameway Studios and Seaberg Picture Framing are Illinois corporations engaged in the business of framing art sold by the galleries. William van Straaten is the president and sole shareholder of these corporations, and, for this reason, we will refer to all of the appellants simply as "van Straaten."

In 1986, van Straaten solicited legal advice from attorney Joel Fenchel and his firm, Fischel & Kahn, regarding the recently enacted Illinois Consignment of Art Act (Act) (see 815 ILCS 320/0.01 et seq. (West 1996)) and its effect on his inventory and sale of consigned art. Specifically, the substance of the legal advice at issue concerned van Straaten's potential liability to the consignment artists in the event of the destruction of the consigned art. The parties disagree as to the advice given and the degree to which the advice was followed by van Straaten.

These issues took on significance when a fire wiped out the gallery and the consignment art within it in 1989. In 1990, van Straaten brought a negligence suit against the owner of building in which the gallery had been located and the company renovating the building at the time of the fire. Several of the consignment artists intervened and brought claims against van Straaten for damages resulting from the

destruction of their artwork (the parties refer to this litigation as the *Mesirow* litigation, which we will adopt for purposes of this appeal). Van Straaten hired the firm of Pope & John to represent his companies in the *Mesirow* litigation. According to the parties, that litigation has settled, although the date of the settlement is somewhat unclear from the record.

Fischel & Kahn brought the instant action against van Straaten for payment of legal fees. Van Straaten counterclaimed for legal malpractice. In response to van Straaten's counterclaim, Fischel & Kahn filed a document request seeking all of the contents of Pope & John's files relating to the *Mesirow* litigation and the consignment artists' claims. Van Straaten objected to production of 38 of the documents (out of 170,000 pages of documents produced, according to van Straaten) on the basis of the attorney-client and work product privileges. The trial court reviewed the documents *in camera* and ruled that 16 were protected by the attorney-client privilege. Van Straaten was ordered to disclose the remaining 22 documents but refused to do so. As a result, on June 3, 1996, the trial court cited van Straaten for contempt and imposed a monetary sanction for its failure to produce those documents.

The documents, which have been filed under seal, can be classified into three groups. One group of documents consists of correspondence between van Straaten and Pope & John. A second group consists of correspondence between Pope & John and the firm originally retained by van Straaten to pursue his malpractice claim against Fischel & Kahn. The third group appears to be internal documents from Pope & John's file on van Straaten.

On appeal, the parties do not dispute that either the attorney-client or work product privilege would normally shield the sought-after documents from disclosure. Rather, they disagree as to whether van Straaten, by counterclaiming against Fischel & Kahn for malpractice, has put the contents of the documents "at issue" and thereby waived both privileges.

■ In Illinois, both the attorney-client privilege and the work product privilege (see 134 Ill. 2d R. 201(b)(2)) may be waived as to a communication put "at issue" by a party who is a holder of the privilege. See *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 199-200, 579 N.E.2d 322 (1991); M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 505.7(5), at 306 (6th ed. 1994). Illinois case law offers few examples as to how a party places a communication "at issue" and thereby waives a privilege. One established example of waiver involves litigation between the attorney and client. When either party to the attorney-client rela-

tionship alleges a breach of duty by the other, the privilege is waived as to communications between the disputing parties. Thus, when a client sues his attorney for malpractice, or when a lawyer sues his client for payment of fees, waiver is applicable to earlier communications between the now-adversarial parties. See *SPSS, Inc. v. Carnahan-Walsh*, 267 Ill. App. 3d 586, 592, 641 N.E.2d 984 (1994) (legal malpractice claim); *People v. O'Banner*, 215 Ill. App. 3d 778, 793, 575 N.E.2d 1261 (1991) (allegation of ineffective assistance of counsel waives claim of privilege as to communications with attorney); *Sokol v. Mortimer*, 81 Ill. App. 2d 55, 65, 225 N.E.2d 496 (1967) (attorney suing for fees). This example of waiver is clearly inapplicable to the present case, since Fischel & Kahn seeks discovery of van Straaten's communications with subsequently retained attorneys, not communications between Fischel & Kahn and van Straaten.

Relying on our supreme court's decision in *Waste Management*, Fischel & Kahn asserts van Straaten has placed the various Pope & John documents in issue by suing for the attorney fees it paid to Pope & John in concluding the *Mesirow* litigation. In *Waste Management*, the insureds defended and settled several suits brought by parties alleging the migration of toxic waste from the insureds' waste disposal sites. The insureds then sought indemnification from their insurers for settlement and defense costs. When the insurers denied coverage, declaratory judgment actions were filed. The insurers sought discovery of the insureds' attorney's files from the underlying environmental litigation. The insureds resisted discovery of these materials on the basis of the attorney-client and work product privileges. *Waste Management*, 144 Ill. 2d at 185-87.

The supreme court in *Waste Management* held the attorney-client privilege had "no application" in the insurance coverage dispute at issue, in light of both the "common interest" doctrine and the cooperation clause in the insurance policy. *Waste Management*, 144 Ill. 2d at 191. Under the common interest doctrine, when an attorney acts for two different parties who have an interest in common, communications by either party to the attorney are not necessarily privileged in a subsequent controversy between the two parties. *Waste Management*, 144 Ill. 2d at 193. Despite the fact the insurer was not a party in the initial suit, the *Waste Management* court found the insureds' attorney in the underlying litigation had acted for the "mutual benefit" of the insureds and the insurer. *Waste Management*, 144 Ill. 2d at 194. In accordance with the common interest doctrine, the attorney-client privilege was "unavailable" to the insureds. *Waste Management*, 144 Ill. 2d at 193-94.

In addition, the privilege was inapplicable due to the cooperation clause in the insureds' contract with the insurers. The insurance policy at issue contained a broad cooperation clause which required the insureds to cooperate in conducting suits and enforcing rights to contribution or indemnification. Further, the insurers had the right to bring suits on behalf of the insureds with the insureds providing "all such information and assistance" reasonably sought by the insurers. *Waste Management*, 144 Ill. 2d at 192. Thus, the insureds had a contractual duty to disclose communications between themselves and defense counsel in the course of the underlying litigation. *Waste Management*, 144 Ill. 2d at 191-92.

In light of its determination that the attorney-client privilege was inapplicable, the *Waste Management* court was not required to address whether, by bringing a declaratory judgment action for indemnification of their defense and settlement costs, the insureds had put their communications with their attorney "at issue." In *dicta*, however, the court suggested they had:

> "[I]t is the very conduct of defense counsel in the underlying lit-igation which is the basis of insurers' declaratory judgment action and its defense to insureds' declaratory judgment action. We therefore agree that defense counsel's litigation files in the underlying cases are relevant and at issue in the present declaratory judgment action." *Waste Management*, 144 Ill. 2d at 190-91.

Similarly, the court found the work product privilege "not applicable" and addressed the possibility of waiver only in *dicta*. According to the *Waste Management* court, application of the privilege in the case before the court would have been inconsistent with the policy consideration underlying the privilege—protection of the adversarial process. Since the sought-after materials were generated for the mutual benefit of the insureds and the insurers, who only later became adversarial, there was no third-party adversary from whom the work product needed protection. *Waste Management*, 144 Ill. 2d at 197-98. Despite having found the privilege inapplicable, the court went further and addressed the question of whether the insureds had put the allegedly privileged communications "at issue" by seeking indemnification:

> "Even assuming, *arguendo*, that the work-product rule has application here, the material would nonetheless be subject to disclosure. There are emerging, in the Federal decisional law, certain exceptions to 'absolute immunity' of opinion work product. One such exception, the 'at issue' exception, permits discovery of

work product where the sought-after material is either the basis of the lawsuit or the defense thereof. (See, *e.g.*, *Handgards, Inc. v. Johnson & Johnson* (N.D. Cal. 1976), 413 F. Supp. 926; *Truck Insurance Exchange v. St. Paul Fire & Marine Insurance Co.* (E.D. Pa. 1975), 66 F.R.D. 129; *Bird v. Penn Central Co.* (E.D. Pa. 1973), 61 F.R.D. 43; *Kearney & Trecker Corp. v. Giddings & Lewis, Inc.* (E.D. Wis. 1969), 296 F. Supp. 979.) This 'at issue' exception wholly comports with our commitment to full and fair disclosure and furtherance of the truthseeking process.

Application of the exception, on this set of facts, would defeat any claim of work-product protection. Here, as in *Truck Insurance Exchange*, insureds seek to have insurers pay for their defense counsel's services while at the same time claiming that insurers have no right to examine counsel's files. We think that even the seemingly impenetrable work-product doctrine would not permit such unfairness and potential injustice. We hold, where, as in the underlying litigation, an attorney represents the common interests of two or more clients whose relationship subsequently becomes adverse, and, in a subsequent action, the work product of the attorney is at issue, Rule 201(b)(2) (134 Ill. 2d R. 201(b)(2)) is not available to bar discovery by one of the original parties." *Waste Management*, 144 Ill. 2d at 199-200.

■ Whether the *dicta* in *Waste Management* can be relied upon as support for Fischel & Kahn's assertion that, by suing for subsequently incurred attorney fees in this case, van Straaten put his communications with subsequent counsel "at issue" is questionable. The attorney fees sought in *Waste Management* were contractual obligations arising in an indemnification setting, and a contractual duty to cooperate was an express term of the contract from which the right to be indemnified for fees and settlement costs sprang. Here, in contrast, the claim for attorney fees is one for damages as a result of malpractice, and the present case involves multiple attorneys advising a single client, not multiple clients (with common interests) consulting a single attorney. Courts in other jurisdictions have generally rejected the contention that a party places otherwise privileged attorney-client communications "at issue" merely by seeking an award of attorney fees as damages. See *Prudential Insurance Co. v. Coca-Cola*, No. 93 Civ. 1456 (S.D.N.Y. July 21, 1993) (holding "a demand for attorneys' fees, whether based on a fee-shifting statute or on a contractual obligation, does not by itself constitute a waiver" of the attorney-client privilege, and finding defendant's claimed inability to challenge the reasonableness of fees absent full disclosure to be "exaggerated"); *Remington Arms Co. v. Liberty Mutual Insurance Co.*, 142 F.R.D. 408, 414 (D. Del. 1992) ("By claiming that its attorney's fees or actions in

the underlying litigation were reasonable, Remington does not forfeit its protection of the privileged documents, providing it does not rely on the exact nature of the legal advice made at that time or introduce its contents to prove these assertions as part of its legal case"); *Playtex FP, Inc. v. Columbia Casualty Co.*, No. 83322 (Del. Super. March 4, 1993) (following *Remington*); *Jakobleff v. Cerrato, Sweeney & Cohn*, 97 A.D.2d 834, 468 N.Y.S.2d 895 (1983) (in a malpractice action by plaintiff against her former divorce attorneys, plaintiff's communications with current divorce attorney were not "at issue" so as to waive privilege where current attorney was impleaded on damages issue only); *Schlumberger Ltd. v. Superior Court*, 115 Cal. App. 3d 386, 393, 171 Cal. Rptr. 413, 417 (1981) (refusing disclosure of communications between client and current counsel representing client in legal malpractice action against former counsel, since privilege would be meaningless "[i]f tendering the issue of damages in a malpractice action waived the privilege"). But see *Finger Lakes Plumbing & Heating, Inc. v. O'Dell*, 101 A.D.2d 1008, 476 N.Y.S.2d 670 (1984) (client suing former counsel waives privilege with respect to subsequent counsel by seeking damages for the period where represented by subsequent counsel). In Illinois, attorney fees and costs may be proved up without necessarily delving into the substance of privileged materials. *Cf., e.g., Harris Trust & Savings Bank v. American National Bank & Trust Co.*, 230 Ill. App. 3d 591, 595, 594 N.E.2d 1308 (1992) (holding that, to support an award of attorney fees and related costs, time sheets must be accompanied by detailed records maintained during the litigation, provide a full and particular accounting of the work completed, name the attorneys working on the matter, indicate the time expended, and specify the hourly rate charged).

We need not resolve this question, however, as there are other reasons for finding van Straaten has put the disputed communications at issue by counterclaiming against Fischel & Kahn for malpractice. When a client asserts a claim of legal malpractice against former counsel and the facts reveal the client was represented by multiple attorneys prior to the alleged act of malpractice, the substance of the legal advice given by all attorneys involved may be directly "at issue" in the malpractice action against one of them. See *Pappas v. Holloway*, 114 Wash. 2d 198, 787 P.2d 30 (1990). The facts of the present case are virtually identical to the facts faced by the Supreme Court of Washington in *Pappas*. In that case, the defendants, the Holloways, had sold cattle infected with brucellosis and had been sued by some of the purchasers. Protracted litigation ensued, during the course of which four different attorneys (including the plaintiff, Pappas) represented the Holloways. No more than two of the attorneys were

retained on the case at any one time. A trial (during which Pappas was not representing the Holloways) ended adversely to the Holloways, and their insurer eventually arranged a settlement of all claims against them. *Pappas*, 114 Wash. 2d at 200, 787 P.2d at 32.

Pappas later sued the Holloways for his attorney fees. The Holloways counterclaimed against Pappas for legal malpractice. Pappas then brought third-party complaints against all attorneys who also represented the Holloways, both before and after him, in the brucellosis litigation. In his third-party complaints, Pappas essentially alleged the third parties, and not he, had been guilty of malpractice. *Pappas*, 114 Wash. 2d at 200-01, 787 P.2d at 32-33. Through discovery, Pappas sought various materials possessed by the third parties pertaining to the brucellosis litigation. The third-party defendants objected, on the basis of the attorney-client privilege, to various documents, including correspondence between the attorneys, the Holloways, and their insurer, as well as notes made by the attorneys during conversations with the Holloways. Discovery was objected to on the basis of the work-product privilege with respect to the attorneys' notes taken during depositions, the attorneys' notes and trial memoranda containing the mental impressions, opinions, and legal theories of the attorneys, and legal memoranda prepared during the course of litigation. *Pappas*, 114 Wash. 2d at 201, 787 P.2d at 33.

The Washington Supreme Court, in what it acknowledged was a case of first impression, first looked at application of the attorney-client privilege. The *Pappas* court noted the well-established rule of waiver of the privilege in cases where a client sues his attorney for malpractice, at least as far as the privilege applies to communications between the parties. *Pappas*, 114 Wash. 2d at 203, 787 P.2d at 34. The court then looked to whether waiver could be extended to communications between the client and other retained counsel. The *Pappas* court concluded it could, in limited circumstances—"[w]here it would be manifest injustice to allow the client to take advantage of the rule of privileges to the prejudice of the attorney, or when it would be carried to the extent of depriving the attorney of the means of obtaining or defending his own rights." *Pappas*, 114 Wash. 2d at 204, 787 P.2d at 34.

According to the court, the Holloways placed their communications with other attorneys in the course of the brucellosis litigation "at issue" when they counterclaimed against Pappas for legal malpractice. *Pappas*, 114 Wash. 2d at 207, 787 P.2d at 36. Pappas had defended the allegations on the ground that his legal advice had not been the proximate cause of the Holloways' damages, *i.e.*, that it was the malpractice of the third-party defendants which caused the Hollo-

ways' losses. Without access to communications between the Holloways and other counsel representing them in the brucellosis litigation, Pappas could not adequately defend himself against the charge of malpractice, the court concluded. *Pappas*, 114 Wash. 2d at 206-07, 787 P.2d at 35-36. While in a narrow sense it had been Pappas' third-party complaints against the other attorneys that placed the privileged communications squarely at issue, the Holloways' malpractice allegation had been the "catalyst" for Pappas' third-party complaints. Since Pappas was entitled to defend the malpractice charge on proximate cause grounds, the Washington Supreme Court found it was fair to find the Holloways ultimately responsible for placing the disputed communications "at issue." *Pappas*, 114 Wash. 2d at 207, 787 P.2d at 36.

The court was careful to distinguish those cases where a claim of legal malpractice is insufficient to put the client's communications with other counsel at issue. See *Pappas*, 114 Wash. 2d at 205, 787 P.2d at 34-35. Where an attorney is retained by a client *subsequent to* any alleged acts of malpractice, *i.e.*, where no issues of proximate cause can arise as to who committed the malpractice, the client has not waived the attorney-client privilege with respect to subsequently retained counsel. See *Miller v. Superior Court*, 111 Cal. App. 3d 390, 168 Cal. Rptr. 589 (1980) (holding that plaintiff who sued former attorney for malpractice stemming from alleged negligent handling of her divorce case did not place communications with current attorney at issue, since second attorney was retained *after* alleged acts of malpractice had taken place); *Dyson v. Hempe*, 140 Wis. 2d 792, 413 N.W.2d 379 (1987) (same).

The Washington Supreme Court distinguished *Jakobleff v. Cerrato, Sweeney & Cohn*, 97 A.D.2d 834, 468 N.Y.S.2d 895 (1983), a case relied upon by van Straaten, on similar grounds. See *Pappas*, 114 Wash. 2d at 206-07, 787 P.2d at 35-36. In *Jakobleff*, as in *Miller* and *Dyson*, the plaintiff sued her former attorneys for damages resulting from their alleged negligence in handling a divorce settlement. The defendants impleaded the plaintiff's current counsel, who had been retained subsequent to the settlement. The former attorneys sought disclosure of privileged communications between the plaintiff and her current attorney. They contended such communications were at issue, inasmuch as they were alleging the plaintiff's current attorney had failed to take certain postsettlement actions that could have mitigated any damages resulting from the supposedly unjust settlement. See *Jakobleff*, 97 A.D.2d at 835, 468 N.Y.S.2d at 897. The *Jakobleff* court held the plaintiff had not waived her privilege as to communications with current counsel:

"By bringing an action against her former attorneys for legal mal-

practice, plaintiff has placed her damages in issue, and defendants may both raise the defense of plaintiff's failure to mitigate damages and assert a third-party claim for contribution against the present attorney for those damages for which the former attorneys may be liable to plaintiff. [Citation.] However, it simply cannot be said that plaintiff has placed her privileged communications with her present attorney in issue, or that discovery of such communications is required to enable defendants to assert a defense or to prosecute their third-party claim. To conclude otherwise would render the privilege illusory in all legal malpractice actions: the former attorney could, merely by virtue of asserting a third-party claim for contribution against the present attorney, effectively invade the privilege in every case." *Jakobleff*, 97 A.D.2d at 835, 468 N.Y.S.2d at 897-98.

The *Pappas* court found *Jakobleff* distinguishable. Notably, the impleaded attorney in *Jakobleff* had not participated in the underlying litigation that formed the basis of the malpractice charge. See *Pappas*, 114 Wash. 2d at 206-07, 787 P.2d at 35-36; *Jakobleff*, 97 A.D.2d at 835, 468 N.Y.S.2d at 897. The *Jakobleff* court concluded that being impleaded only on the issue of damages was insufficient to put the privileged communications in issue. *Jakobleff*, 97 A.D.2d at 835, 468 N.Y.S.2d at 897-98. In contrast, the third-party defendants in *Pappas* had all, along with Pappas himself, participated actively in the Holloways' defense in the underlying brucellosis litigation. All, therefore, had the opportunity to commit or contribute to the legal malpractice alleged, and Pappas, by raising the defense of alternate proximate cause, could obtain through discovery the otherwise privileged documents. See *Pappas*, 114 Wash. 2d at 206-07, 787 P.2d at 35-36.

We find the reasoning of the *Pappas* court sound and applicable to the present case. Van Straaten apparently concedes he was represented by both Fischel & Kahn and Pope & John at various times prior to the settlement of the *Mesirow* litigation. According to van Straaten, "[i]n July of 1990, van Straaten retained an attorney, Peter John of Pope & John, to represent his companies in the *Mesirow* litigation and to defend them against the consignment artists' claims." Since representation by multiple attorneys prior to any alleged malpractice is not at issue, we must look to see whether the privileged materials in this case are crucial to Fischel & Kahn's defense of the malpractice claim.

We believe they are. Fischel & Kahn has raised various affirmative defenses to van Straaten's counterclaim, one of which concerns the settlement of the *Mesirow* litigation. In its fourth affirmative defense, Fischel & Kahn alleges van Straaten improperly settled with some of the consignment artists and that this settlement was the proximate

cause of van Straaten's claimed damages. In support, Fischel & Kahn alleges:

"a. [Counterplaintiffs and third-party plaintiffs] were involved in litigation with parties responsible for the April 15, 1989 fire;

b. They settled all disputes with the parties involved in the underlying litigation;

c. They received payments from insurance companies under a number of insurance policies;

d. They received settlement proceeds from the responsible parties;

e. Upon information and belief, the monies received from the insurance proceeds and the settlement fully compensated the plaintiffs for the loss incurred as a consequence of the fire;

f. The settlement monies paid to the artists were voluntary payments;

g. They were not obligated to make those payments under the consignment contracts;

h. To the extent that they paid proceeds in excess of what they were required to under the consignment contracts, the Counter-Defendants and Third-Party Defendants cannot be liable for these payments;

i. To the extent that the Third-Party Plaintiffs and Counter-Plaintiffs suffered injuries as claimed in the Counterclaim and Third-Party action, these injuries were compensated from the settlement proceeds received;

j. To the extent that the Third-Party Plaintiffs and Counter-Plaintiffs suffered injuries as claimed in the Counterclaim and Third-Party action, they were as a consequence of their improperly settling claims with the artists."

■ We reject van Straaten's attempt to distinguish *Pappas* on the basis that Fischel & Kahn has not sought contribution from or filed a third-party complaint against Pope & John. Fischel & Kahn did file a countercomplaint for contribution against van Straaten. While Fischel & Kahn has taken no legal action with respect to Pope & John, the central question remains whether a reasonable allegation has been made that liability on the malpractice claim turns on the actions of subsequently retained counsel. How the allegation manifests itself, whether in an affirmative defense or a counterclaim for contribution, is irrelevant; a party is not required to file a counterclaim for contribution in order to raise the intervening acts of others as an affirmative defense. See *Bieter Co. v. Blomquist*, 156 F.R.D. 173, 177 (D. Minn. 1994) (privileged documents of subsequently retained attorney still "highly relevant" to former counsel's defense of legal malpractice claim, despite the fact that no contribution claim had been filed; refus-

ing to distinguish *Pappas* on this basis). We believe the allegations raised in Fischel & Kahn's affirmative defenses, quoted above, are sufficient to put the cause of van Straaten's damages at issue and to justify waiver of the attorney-client privilege. But see *Bennett v. Oot & Associates*, 162 Misc. 2d 160, ___, 616 N.Y.S.2d 163, 166 (1994) (refusing to find privilege waived with respect to communications with successor counsel even though original counsel, in defense to malpractice charge by client, alleged successor counsel's own negligence, since successor counsel's negligence could be discovered through documents in the public record).

We see no reason why this same analysis should not apply to documents that van Straaten claims are protected by the work product privilege. Our supreme court in *Waste Management* suggested both the attorney-client and the work product privileges may be waived by placing the privileged communications at issue. See *Waste Management*, 144 Ill. 2d at 190-91, 199-200. The justification for "at issue" waiver of a privilege—that a party waives a privilege via an affirmative act which places the contents of the privileged documents at issue—focuses on the actions of the privilege holder, not on the nature of the privilege held.

With these principles in mind, we look to the privileged materials in this case. Sealed documents 1 through 10 are correspondence between van Straaten and attorneys at Pope & John concerning the *Mesirow* litigation. We find van Straaten has waived his privilege with respect to these documents, and Fischel & Kahn is entitled to discovery of them. Sealed documents 17 and 19 through 23 appear to be internal documents from Pope & John's file on van Straaten concerning the *Mesirow* litigation. These documents are also discoverable by Fischel & Kahn. The remaining documents are more troubling. Sealed documents 11, 12, 14, 15, 16, and 18 are correspondence between Pope & John and a third firm, the firm first retained by van Straaten to pursue his malpractice claim against Fischel & Kahn. We believe these documents, which discuss potential inconsistencies between van Straaten's position in the *Mesirow* litigation and his position in the malpractice complaint against Fischel & Kahn, should remain privileged. While the *Mesirow* litigation is discussed in these documents, they primarily concern van Straaten's position in his malpractice claim against Fischel & Kahn. Waiver does not extend to communications between van Straaten and counsel retained in regards to the present dispute with Fischel & Kahn, absent an allegation that they too were giving advice on the ongoing *Mesirow* settlements. See *Bieter*, 156 F.R.D. at 178 (disclosure of communications with subsequently retained counsel would be immune from disclosure if it was clear all alleged acts of

malpractice were committed by former counsel, "independent of" subsequent counsel's representation); *National Excess Insurance Co. v. Civerolo, Hansen & Wolf*, 139 F.R.D. 398, 400 (D.N.M. 1991) (agreeing with proposition that sought-after communications with subsequently retained counsel must have occurred during the course of the underlying litigation, but suggesting communications with current malpractice counsel could be discoverable if he was also advising client at time of alleged malpractice).

Fischel & Kahn has cross-appealed as to 16 other documents which the trial court found to be protected by the attorney-client privilege. As with the 22 documents just discussed, these 16 documents also generally fall into three categories: correspondence between van Straaten and attorneys at Pope & John concerning the *Mesirow* litigation; internal documents from Pope & John's file on van Straaten concerning the *Mesirow* litigation; and correspondence between Pope & John and the firm first retained by van Straaten to pursue his malpractice claim against Fischel & Kahn. Based upon our earlier analysis, any privilege has been waived as to documents falling into the first two categories, while documents in the third category should remain privileged.

■ We remand consideration of these 16 documents to the trial court. Some of these documents refer both to the *Mesirow* litigation and to van Straaten's position in his malpractice claim against Fischel & Kahn and will need to be redacted accordingly. In light of our finding that several of the 22 withheld documents were privileged, as contended by van Straaten, we vacate the trial court's order of contempt and direct van Straaten to turn over, consistent with this opinion, all documents for which a claim of privilege has been waived.

Affirmed as modified.

CAHILL and GORDON, JJ., concur.