(No. 86831

FISCHEL & KAHN, LTD., Appellee, v. VAN STRAATEN GALLERY, INC., *et al.*, Appellants.

*Opinion filed January 21, 2000.—Rehearing denied April 3, 2000.*

Daniel S. Hefter, Martin B. Carroll and Todd Harold Fox, of Hefter & Carroll, of Chicago, for appellants.

Hinshaw & Culbertson, of Chicago (Stephen R. Swofford, Thomas P. McGarry and David M. Schultz, of counsel), for appellee.

JUSTICE MILLER delivered the opinion of the court:

Plaintiff, Fischel & Kahn, Ltd. (Fischel & Kahn), filed a complaint in the circuit court of Cook County against defendants, van Straaten Gallery, Inc., and the New van Straaten Gallery, Inc. (van Straaten), for attorney fees. Van Straaten filed a counterclaim alleging that Fischel & Kahn was professionally negligent in representing van Straaten. During discovery, Fischel & Kahn filed a request for the production of documents. Van Straaten refused to produce 38 documents resulting from representation by subsequent counsel, claiming that documents were protected by attorney-client and work product privileges. Of the 38 documents van Straaten refused to produce, the trial court ordered the production of 22 documents. Van Straaten refused to produce any of the documents. As a result of van Straaten's failure to produce the documents, the trial court cited van Straaten for contempt and fined van Straaten. Van Straaten appealed. Fischel & Kahn cross-appealed. The appellate court found that van Straaten had waived any privileges

as to some, but not all,. of the contested documents and ordered van Straaten to turn over the documents for which it found van Straaten had waived any privilege. The appellate court vacated the trial court's order of contempt. 301 Ill. App. 3d 336. We allowed van Straaten's petition for leave to appeal (177 Ill. 2d R. 315(a)), and we now reverse that portion of the appellate court's opinion requiring disclosure.

## BACKGROUND

In 1986, van Straaten retained the law firm of Fischel & Kahn to provide legal advice regarding the impact that the then recently enacted Illinois Consignment of Art Act (Consignment Act) (815 ILCS 320/0.01 *et seq.* (West 1996)) would have on van Straaten's art gallery business. Fischel & Kahn advised van Straaten that it could limit its liability to consignment artists in case of damage or destruction of the artists' work to the cost of the materials used to create the work. Fischel & Kahn drafted contractual language consistent with this advice for van Straaten to use in contracts with consignment artists.

On April 15, 1989, a fire destroyed van Straaten's gallery, including van Straaten's inventory of consigned art. Van Straaten filed suit against the owner of the building where the gallery was located and against the company that was renovating the building at the time of the fire. Several consignment artists intervened in this litigation, bringing claims against van Straaten for damages stemming from the destruction of their artwork. (The parties here refer to this action as the Mesirow litigation, for the name of one of the entities in the underlying litigation.) In July 1990, van Straaten retained the law firm of Pope & John to represent van Straaten in the Mesirow litigation. We note that Fischel & Kahn continued to represent van Straaten until no later than March 31, 1992.

Fischel & Kahn commenced the present action on October 14, 1992, when it filed a complaint in the circuit court of Cook County against van Straaten seeking payment of legal fees. In the complaint, Fischel & Kahn alleged that from on or about August 1, 1990, through March 31, 1992, Fischel & Kahn furnished professional legal services to van Straaten totaling $41,903.26.

Van Straaten answered the complaint by denying the allegations that payment was due to Fischel & Kahn. Additionally, van Straaten asserted several affirmative defenses alleging that no amount was due to Fischel & Kahn because Fischel & Kahn breached fiduciary duties owed to van Straaten; the contract for legal services was voidable at the discretion of van Straaten; and Fischel & Kahn breached its agreement to perform legal services for van Straaten. Van Straaten also filed a counterclaim against Fischel & Kahn. In the counterclaim, van Straaten alleged, among other things, that Fischel & Kahn committed malpractice in 1986 by negligently providing van Straaten with erroneous advice regarding the liability limiting contract provision Fischel & Kahn drafted for van Straaten to use with consignment artists.

In answering van Straaten's counterclaim, Fischel & Kahn denied that it was professionally negligent. Further, Fischel & Kahn filed several affirmative defenses of its own, alleging that van Straaten was contributorily negligent in failing to exercise ordinary care, that van Straaten assumed the risk of damages in failing to secure adequate insurance, and that the settlement of the disputes with the responsible parties constituted an accord and satisfaction of any claims for damages van Straaten might have resulting from the Mesirow litigation.

Fischel & Kahn filed a request for production of documents on July 30, 1993. In this request, Fischel & Kahn sought all of the contents of Pope & John's files relating

to the Mesirow litigation and the consignment artists' claims. Van Straaten objected to the production of 38 of the documents based either on the attorney-client privilege or the work product doctrine.

After an *in camera* inspection, the trial court found that van Straaten had waived its attorney-client and attorney work product privileges with respect to 22 of the documents. The trial court believed these documents were relevant to claims made by van Straaten in its counterclaim and that van Straaten waived any privilege when it placed these claims into controversy by filing the counterclaim against Fischel & Kahn. The trial court ordered these 22 documents disclosed. The trial court, however, believed that 16 of the 38 contested documents remained privileged. Van Straaten refused to produce any of the 22 documents ordered disclosed and was held in contempt.

Van Straaten appealed, asking the appellate court to find that the privilege had not been waived and to reverse the trial court's order holding van Straaten in contempt for failure to produce the documents that it alleged were protected by the attorney-client and work product privilege. In a cross-appeal, Fischel & Kahn asked the appellate court to modify the order of the trial court finding 16 documents protected by the attorney-client and work product privilege by finding that van Straaten, in addition to waiving the privilege with respect to the 22 documents, also waived any privilege with respect to the 16 remaining documents.

The appellate court affirmed, concluding that van Straaten's counterclaim for malpractice and Fischel & Kahn's affirmative defenses to that action put the contents of the documents at issue, waiving both the attorney-client and work product privileges. 301 Ill. App. 3d at 341-42. Accordingly, the appellate court held that documents 1 through 10, 17, and 19 through 23 were

discoverable. The appellate court held, however, that documents 11, 12, 14, 15, 16, and 18 remained privileged because these documents were correspondence between Pope & John and a law firm later retained by van Straaten to pursue the malpractice claim against Fischel & Kahn. The appellate court remanded the cause for the trial judge to consider the status of the 16 documents the trial court had found protected. Finally, the appellate court vacated the trial court's order of contempt and directed van Straaten to turn over all documents for which it found any privilege had been waived. 301 Ill. App. 3d at 348. We allowed van Straaten's petition for leave to appeal. 177 Ill. 2d R. 315(a).

## DISCUSSION

The issue before us is whether van Straaten, by filing a counterclaim against Fischel & Kahn for malpractice, waived the attorney-client and work product privileges with Pope & John, thereby subjecting the disputed documents to disclosure.

Because van Straaten contends that the discovery of the documents is protected by both the attorney-client privilege and the work product doctrine, we address each separately.

### I. Attorney-Client Privilege

In defining the attorney-client privilege, this court has stated that where legal advice of any kind is sought from a professional legal advisor in his capacity as such, the communications relating to that purpose, made in confidence by the client, are protected from disclosure by himself or the legal advisor, except the protection be waived. *In re Himmel*, 125 Ill. 2d 531, 541 (1988), quoting *People v. Adam*, 51 Ill. 2d 46, 48 (1972), quoting 8 J. Wigmore, Evidence § 2292 (McNaughton rev. ed. 1961).

" 'The purpose of the attorney-client privilege is to encourage and promote full and frank consultation be-

tween a client and legal advisor by removing the fear of compelled disclosure of information.' " *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 190 (1991), quoting *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 89 Ill. 2d 103, 117-18 (1982); see also *Upjohn Co. v. United States*, 449 U.S. 383, 66 L. Ed. 2d 584, 101 S. Ct. 677 (1981). Moreover, "[t]he [attorney-client] privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer being fully informed by the client." *Upjohn*, 449 U.S. at 389, 66 L. Ed. 2d at 591, 101 S. Ct. at 682.

In the present case, Fischel & Kahn asserts that van Straaten waived its attorney-client privilege with Pope & John when van Straaten sued Fischel & Kahn for malpractice. Fischel & Kahn argues that because van Straaten seeks damages for the defense and settlement of the Mesirow litigation, any facts surrounding that litigation are central to the question of whether Fischel & Kahn can be held liable for malpractice. Fischel & Kahn claims that without receiving all the documents surrounding the Mesirow litigation and its settlement, including documents that reveal otherwise privileged attorney-client communications, it would be impossible to determine whether and to what extent van Straaten's alleged loss resulted from Fischel & Kahn's alleged malpractice. We disagree.

In the present case, it is undisputed that van Straaten, by counterclaiming against Fischel & Kahn for legal malpractice, has placed Fischel & Kahn's advice at issue and has waived the attorney-client privilege with respect to communications between it and Fischel & Kahn. However, we do not believe that it follows that van Straaten, by that same action, has waived the attorney-client privilege with respect to communications between it and its subsequent counsel, Pope & John.

We find support for our conclusion in cases from other jurisdictions addressing similar circumstances. In *Jakobleff v. Cerrato, Sweeney & Cohn*, 97 A.D.2d 834, 468 N.Y.S.2d 895 (1983), the court held that when a plaintiff sued her former attorney for malpractice, she did not waive the attorney-client privilege as to her present attorney when the defendant attorney impleaded the present attorney on the issue of damages. The court stated that by bringing an action against her former attorney for legal malpractice, "plaintiff has placed her damages in issue, and defendants may both raise the defense of plaintiff's failure to mitigate damages and assert a third-party claim for contribution against the present attorney for those damages for which the former attorneys may be liable to plaintiff." *Jakobleff*, 97 A.D.2d at 835, 468 N.Y.S.2d at 897. The court further stated:

> "[I]t simply cannot be said that plaintiff has placed her privileged communications with her present attorney in issue, or that discovery of such communications is required to enable defendants to assert a defense or to prosecute their third-party claim. To conclude otherwise would render the privilege illusory in all legal malpractice actions: the former attorney could, merely by virtue of asserting a third-party claim for contribution against the present attorney, effectively invade the privilege in every case." *Jakobleff*, 97 A.D.2d at 835-36, 468 N.Y.S.2d at 897.

In the present case, we believe the affirmative defenses filed by Fischel & Kahn are analogous to the third-party claim for contribution against the attorney in *Jakobleff*. To allow Fischel & Kahn to invade the attorney-client privilege with respect to subsequently retained counsel in this case simply by filing the affirmative defenses it did would render the privilege illusory with respect to the communications between van Straaten and Pope & John. Thus, we believe that the allegations raised in Fischel & Kahn's affirmative defenses were insufficient to put the cause of van Straaten's damages at issue,

resulting in waiver of the attorney-client privilege in this case.

Similar to *Jakobleff*, in *Miller v. Superior Court*, 111 Cal. App. 3d 390, 168 Cal. Rptr. 589 (1980), plaintiff Miller sued one of her former attorneys for malpractice, alleging that he negligently represented her in her divorce. The attorney raised the statute of limitations as a defense and requested discovery of otherwise privileged communications between plaintiff and other attorneys after defendant's alleged malpractice. The court held that the communications with plaintiff's attorneys after the alleged malpractice were protected by the attorney-client privilege. *Miller*, 111 Cal. App. 3d at 395, 168 Cal. Rptr. at 591. The court explained:

> "Miller's state of knowledge is clearly in issue and may be proved by any competent evidence available to real parties [*i.e.*, Miller's former attorney]. However, the mere fact that her state of mind is in issue does not cause a waiver of her privilege concerning confidential communications between her and attorneys she consulted after the alleged malpractice. There is no statutory waiver in such circumstances, and no basis for creating a nonstatutory waiver. To do so would create an intolerable burden upon the attorney-client privilege, making it very difficult for the parties to the relationship to openly discuss matters which might eventually lead to litigation." *Miller*, 111 Cal. App. 3d at 394-95, 168 Cal. Rptr. at 591.

We believe that a similar principle applies in this case. That van Straaten's damages are subject to dispute by the parties does not mean that van Straaten has waived its attorney-client privilege regarding communications between it and Pope & John that might touch on that question. If raising the issue of damages in a legal malpractice action automatically resulted in the waiver of the attorney-client privilege with respect to subsequently retained counsel, then the privilege would be unjustifiably curtailed. See *Schlumberger Ltd. v. Superior*

*Court*, 115 Cal. App. 3d 386, 393, 171 Cal. Rptr. 413, 417 (1981).

In support of its position, Fischel & Kahn relies on the decision by the Supreme Court of Washington in *Pappas v. Holloway*, 114 Wash. 2d 198, 787 P.2d 30 (1990). In that case, the court held that when clients sued a former attorney for malpractice, the clients waived the attorney-client privilege with respect to all attorneys involved in the underlying litigation. *Pappas*, 114 Wash. 2d at 208, 787 P.2d at 36.

We believe that *Pappas* is distinguishable from the present case. In *Pappas*, attorney Pappas sued his former clients, the Holloways, for attorney fees. The Holloways counterclaimed, alleging that Pappas committed malpractice in his handling of the underlying litigation. Pappas then brought third-party actions against other attorneys who jointly represented the Holloways in the underlying matter. Pappas alleged the same cause of action against the third-party defendants as the Holloways had alleged against him. Pappas later sought discovery of the third-party attorneys' files pertaining to the underlying suit. The lawyers objected to the production of the requested materials on the basis of the attorney-client privilege.

The Washington Supreme Court affirmed the trial court's ruling that the Holloways waived the attorney-client privilege with respect to all the lawyers involved in the underlying litigation. The court concluded that the Holloways could not bring an action against Pappas for malpractice and at the same time protect from disclosure communications made with other lawyers who also participated in the underlying litigation that gave rise to the Holloways' malpractice claim. Distinguishing *Miller* and *Jakobleff*, the *Pappas* court noted that the communications sought by Pappas took place during the time of the alleged malpractice and involved lawyers who were

also representing the clients in the same matter when the malpractice allegedly occurred. *Pappas*, 114 Wash. 2d at 205-06, 787 P.2d at 34-35.

For these reasons, we believe that *Pappas* is distinguishable from the present case. Here, no question exists regarding who allegedly committed the malpractice complained of. There are no allegations in van Straaten's counterclaim referring to Fischel & Kahn's conduct during the Mesirow litigation. Here, Fischel & Kahn's alleged negligence, occurring in 1986, was already complete at the time Pope & John was retained. Thus, we do not perceive the same problem here as the *Pappas* court did in determining who, among a number of different lawyers handling the same matter simultaneously, might have committed the alleged malpractice.

Moreover, *Pappas* ruled in favor of disclosure of the communications with the other lawyers only after determining, under *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975), that application of the privilege would deny Pappas access to information vital to his defense of the Holloways' malpractice action. The *Pappas* court believed that decisions made at various stages in the proceedings would be at issue in the malpractice case, and the court noted that Pappas did not actually try the case or take part in its eventual settlement. We do not believe that the material sought by Fischel & Kahn in this case is similarly vital to its defense of van Straaten's malpractice action. Nondisclosure of van Straaten's communications with Pope & John about the course and conduct of the Mesirow litigation will not prevent Fischel & Kahn from challenging van Straaten's evidence on the issue of damages. Evidence regarding the client's damages resulting from the law firm's alleged negligence would, in the present context, be readily available to either party. Thus, we cannot conclude here, as the court did in *Pappas*, that the requested information is vital to the lawyer's defense of the malpractice action.

As additional authority, Fischel & Kahn directs this court's attention to *Rutgard v. Haynes*, 185 F.R.D. 596 (S.D. Cal. 1999). In *Rutgard*, the court held that a plaintiff, by claiming damages to recover the amount of a settlement of an underlying case, waived the attorney-client privilege between himself and a subsequently retained attorney by putting "in issue" the reasonableness of that settlement and the attorney's actions in defending plaintiff and recommending that settlement. *Rutgard*, 185 F.R.D. at 599-600.

Although *Rutgard* offers support for Fischel & Kahn's position, we believe that the better approach is set forth in *Jakobleff* and *Miller*. Thus, we disagree with Fischel & Kahn's assertion that, without reviewing all the documents surrounding the Mesirow litigation and its settlement, it is impossible to determine whether and to what extent van Straaten's alleged loss resulted from Fischel & Kahn's alleged malpractice, if any, or some other source. Here, the privileged documents present one alternative means, though perhaps the most convenient, in which this information may be obtained. Mere convenience, however, should not justify waiver of the attorney-client privilege. To allow Fischel & Kahn access to the privileged documents in this case would, we believe, unnecessarily undermine the purpose of the attorney-client privilege to encourage full and frank communication between attorneys and their clients. See *Waste Management*, 144 Ill. 2d at 190; see also *Upjohn Co.*, 449 U.S. at 389, 66 L. Ed. 2d at 591, 101 S. Ct. at 682. Therefore, we hold that van Straaten has not waived the attorney-client privilege in this case with respect to Pope & John by filing a malpractice action seeking attorney fees and settlement costs of the Mesirow litigation.

## II. Work Product Doctrine

Rule 201(b)(2) sets the parameters for the scope of discovery of work product materials. It provides, in pertinent part:

"(2) \*\*\* *Work Product.* \*\*\* Material prepared by or for a party in preparation for trial is subject to discovery only if it does not contain or disclose the theories, mental impressions, or litigation plans of the party's attorney." 166 Ill. 2d R. 201(b)(2).

The work product doctrine provides a broader protection than the attorney-client privilege and is designed to protect the right of an attorney to throughly prepare his case and to preclude a less diligent adversary attorney from taking undue advantage of the former's efforts. See *Hickman v. Taylor*, 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385 (1947).

Similar to the argument Fischel & Kahn made with respect to the attorney-client privilege, Fischel & Kahn contends that van Straaten waived the work product privilege by suing Fischel & Kahn for malpractice. Again, Fischel & Kahn asserts that without reviewing all the documents surrounding the Mesirow litigation and its settlement, including Pope & John's documents that reveal otherwise privileged work product, it would be impossible to determine whether and to what extent van Straaten's alleged loss resulted from Fischel & Kahn's alleged malpractice.

Initially, we observe that the work product documents sought by Fischel & Kahn in this case pertain to the underlying Mesirow litigation, which has concluded. It has been held, however, that the work product doctrine protects materials prepared for any litigation or trial so long as they were prepared by or for a party to the subsequent litigation. *Federal Trade Comm'n v. Grolier Inc.*, 462 U.S. 19, 25-26, 76 L. Ed. 2d 387, 393, 103 S. Ct. 2209, 2213-14 (1983). The rationale for continuing protection, even in unrelated cases, was explained in *In re Murphy*, 560 F.2d 326 (8th Cir. 1977):

"If work product is protected in related, but not unrelated future cases, an attorney would be hesitant to assemble extensive work product materials because of the concern

that the materials will not be protected in later, unrelated litigation. The unrelatedness of the subsequent litigation provides an insufficient basis for disregarding the privilege ***." *Murphy*, 560 F.2d at 335.

We agree with the rationale expressed in *Murphy* and conclude that the work product privilege extends to all subsequent litigation. See, *e.g.*, *Midland Investment Co. v. Van Alstyne, Noel & Co.*, 59 F.R.D. 134 (S.D.N.Y. 1973); *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 275 F. Supp. 146 (E.D. Pa. 1967). The issue then becomes whether van Straaten has waived the work product doctrine by suing Fischel & Kahn for malpractice.

As stated, van Straaten is suing Fischel & Kahn for malpractice. Van Straaten is attempting to recover damages in the amount it settled the Mesirow litigation as well as attorney fees. Although Pope & John's work product may be relevant to the issues raised, we do not believe that its potential relevance justifies waiver of the work product doctrine in this case. If a lawyer's work product were subject to disclosure to opposing counsel merely on a showing of relevancy, much of what is now put down in writing would remain unwritten. "An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served." *Hickman*, 329 U.S. at 511, 91 L. Ed. at 462, 67 S. Ct. at 393-94. For the reasons stated above, and for the reasons expressed in the earlier discussion of the attorney-client privilege, we conclude that van Straaten did not waive the work product doctrine in this case by filing a malpractice action against Fischel & Kahn.

## CONCLUSION

For the reasons stated, we reverse that part of the

appellate court judgment requiring disclosure of the privileged documents and remand to the circuit court for further proceedings consistent with this opinion.

*Appellate court judgment affirmed in part*
*and reversed in part;*
*cause remanded.*