NOTICE
Decision filed 02/07/18. The text of this decision may be changed or corrected prior to the filing of a Petiion for Rehearing or the disposition of the same.

2018 IL App (5th) 150384

NO. 5-15-0384

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

BILL DAILY, M.D., and CARDIOTHORACIC ) Appeal from the
SURGERY ASSOCIATES, P.C., ) Circuit Court of
    ) St. Clair County.
    Plaintiffs-Appellants, )
    )
v. ) No. 09-L-405
    )
GREENSFELDER, HEMKER & GALE, P.C.; )
SSM HEALTHCARE CORPORATION; and )
SSM HEALTHCARE ST. LOUIS, ) Honorable
    ) Vincent J. Lopinot,
    Defendants-Appellees. ) Judge, presiding.
_____

    JUSTICE MOORE delivered the judgment of the court, with opinion.
    Justice Welch concurred in the judgment and opinion.
    Justice Chapman dissented, with opinion.

**OPINION**

¶ 1    The plaintiffs, Bill Daily, M.D., and Cardiothoracic Surgery Associates, P.C., appeal the following orders of the circuit court of St. Clair County: (1) a July 13, 2015, order granting the motion of the defendant, Greensfelder, Hemker & Gale, P.C. (Greensfelder), to compel the production of certain documents the plaintiffs claim are protected by the attorney-client, work product, and accountant-client privileges; (2) an August 18, 2015, order denying the plaintiffs' motion to reconsider and finding the plaintiffs to be in contempt for failure to abide by the July 13, 2015, order granting the motion to compel; and (3) a September 10, 2015, order modifying the August 18, 2015, order to impose a $50 fine upon the plaintiffs to facilitate the appeal of

1

these orders. On appeal, the plaintiffs argue that the circuit court erred in finding the "at issue" and "subject matter waiver" exceptions to the attorney-client, work product, and accountant-client privileges apply to allow for discovery of the documents at issue.

¶ 2   For the reasons that follow, we vacate the July 13, 2015, August 18, 2015, and September 10, 2015, orders and remand with directions that the plaintiffs produce all documents listed in its privilege logs that are discoverable in light of our opinion. Further, should the plaintiffs, in good faith, maintain privilege as to any of the documents in its privilege logs based on the principles set forth in this opinion, the plaintiffs shall submit a privilege log that conforms to the requirements of Illinois Supreme Court Rule 201(n) (eff. July 30, 2014). Finally, we direct that in the event the parties are not able to resolve all issues between them with regard to the documents at issue, and Greensfelder files a new motion to compel, the circuit court shall evaluate the plaintiffs' privilege log, conduct an *in camera* review of the disputed documents if needed, and issue an order adjudicating their discoverability in light of our opinion.

¶ 3                                              FACTS

¶ 4   Although the instant lawsuit commenced on July 30, 2009, the operative complaint at the time the circuit court entered the orders on appeal was the third amended complaint (complaint), filed by leave of the circuit court on May 4, 2015.[1] We set forth the allegations of the complaint in detail because we find them significant in analyzing the issues on appeal. According to the complaint, Greensfelder was the primary provider of legal services for the plaintiffs, a corporation providing cardiothoracic services to patients at various facilities, from its inception in 1996. Beginning in 1997, Greensfelder represented the plaintiffs in negotiating and drafting

---

[1]Greensfelder has included the plaintiffs' motion for leave to file a fourth amended complaint and proposed fourth amended complaint, filed in the circuit court on December 1, 2015, in the appendix to the appellee's brief. These documents are not part of the record on appeal and were not before the circuit court at the time that it ruled on the orders at issue on appeal. Therefore, we will not consider them. See *Avery v. Sabbia*, 301 Ill. App. 3d 839, 843-44 (1998).

2

employment agreements with various doctors, all of which included noncompete agreements. In addition, Greensfelder represented the plaintiffs in negotiating, drafting, and executing shareholder agreements with the doctors that were employed by the plaintiffs.

¶ 5　According to the complaint, Greensfelder simultaneously served as general counsel for SSM Healthcare St. Louis (SSM), a not-for-profit healthcare organization that owns and operates several medical facilities in the St. Louis, Missouri, region. In 2003, the plaintiffs agreed to Greensfelder's representation of both the plaintiffs and SSM during negotiations between them for the purpose of achieving an agreement for the plaintiffs to become the exclusive provider of cardiovascular surgery services at two of SSM's facilities, DePaul and Kirkwood. The agreements, which were drafted by Greensfelder, contained nonsolicitation clauses providing that SSM would not employ the plaintiffs' employees or physicians without the plaintiffs' written consent.

¶ 6　The complaint further alleges that in 2006, the plaintiffs became the exclusive provider of cardiovascular surgery services at two more of SSM's facilities, despite the fact that at this time, the plaintiffs did not have contracts with SSM governing this relationship because negotiations remained ongoing.[2] Negotiations between the plaintiffs and SSM broke down in early 2007, when Greensfelder communicated, to counsel for the plaintiffs and counsel for the plaintiffs' employee doctors, a list of SSM's "non-negotiables" regarding a proposed network agreement. Following an exchange of letters between the attorney for the doctors and the plaintiffs' counsel, Laura J. Kipnis, a lawyer from the law firm of Stinson Morrison Hecker LLP (Stinson), the doctors filed suit in the circuit court of St. Louis County, Missouri (the Missouri litigation),

---

[2]Although not specifically alleged as a statement of fact in the complaint, it appears from paragraph 29 of the complaint that Greensfelder is at least alleging it withdrew from its representation of the plaintiffs on May 26, 2004.

3

seeking, *inter alia*, a declaratory judgment that the noncompete clauses in their respective employment contracts were unenforceable.

¶ 7    The allegations of the complaint further state that, on March 6, 2007, Greensfelder filed a motion, on behalf of SSM, to intervene in the Missouri litigation, seeking, *inter alia*, a declaratory judgment that the nonsolicitation clauses in the 2003 service contracts for DePaul and Kirkwood, as well as the noncompete clauses in the employment contract between the plaintiffs and the doctors involved in the Missouri litigation, were unenforceable, despite Greensfelder having drafted those clauses. The plaintiffs filed a motion to disqualify Greensfelder from representing SSM in the Missouri litigation due to a conflict of interest, but that motion was never ruled upon due to a settlement of that litigation.

¶ 8    The complaint continues by alleging that, on May 16, 2007, settlement negotiations occurred among all of the parties to the Missouri litigation, concluding with a memorandum of understanding as to the settlement terms between the parties. This memorandum provided in part for mutual releases of all parties from claims which were or could have been asserted in the pending litigation, and Greensfelder drafted and inserted a provision that specifically included itself as a released party.

¶ 9    Count I of the complaint alleges a cause of action against Greensfelder for breach of fiduciary duty based upon the following actions on the part of Greensfelder: (1) representing a party adverse to the plaintiffs in a substantially similar matter without first obtaining written informed consent, (2) using information obtained during representation of the plaintiffs to their disadvantage, (3) subordinating the plaintiffs' interests to its own by, *inter alia*, including itself as a released party in the settlement documents, (4) coordinating strategy and otherwise advising attorneys with adverse interests to the plaintiffs, and (5) aiding and abetting SSM, as early as

4

May 2006, in SSM's efforts to break up the plaintiffs' practice or place the plaintiffs under duress to influence them to breach their agreements with doctors that SSM wished to hire as its own. According to counts I and II, one or more of these breaches by Greensfelder of its fiduciary duty to the plaintiffs proximately caused "severe damage to [the] [p]laintiffs' financial well-being as well as [the] [p]laintiffs' professional reputation, including, but not limited to, lost compensation, lost income, past, present, and future, lost value, and lost past, present and future business opportunities." The remaining counts of the complaint allege causes of action against SSM and its parent corporation for conspiracy and vicarious liability respectively.

¶ 10    During discovery, the plaintiffs requested that Greensfelder produce "all work done on behalf of SSM" in the Missouri litigation. Greensfelder objected on the basis of the attorney-client privilege and produced a lengthy privilege log. The plaintiffs filed a motion to compel, seeking discovery of all the documents in the privilege log dated after October 4, 2006, the date on which the plaintiffs alleged Greensfelder began coordinating strategy with attorneys representing the physicians. The circuit court granted the motion to compel; Greensfelder requested a finding of "friendly contempt," which the circuit court granted; and Greensfelder appealed to this court. This court affirmed the circuit court's ruling, holding that because the documents at issue related directly to "a matter on which Greensfelder attorneys provided simultaneous representation to [the plaintiffs] and SSM," the documents fell within the common representation exception to the attorney-client privilege. *Daily v. Greensfelder, Hemker & Gale, P.C.*, 2014 IL App (5th) 130273-U, ¶ 24.

¶ 11    On February 20, 2015, Greensfelder filed a motion to compel production of documents. In so doing, Greensfelder requested the circuit court find the plaintiffs had waived the attorney-client, work product, and accountant-client privileges "with respect to their representation by

5

Sharon Daily; Stinson, Morrison, Hecker LLP (Stinson); and Padberg & Corrigan (Padberg) during the time period in which [the] [p]laintiffs claim Greensfelder committed malpractice,[3] and an order that the plaintiffs produce the documents identified on [the] [p]laintiffs' privilege logs." In its motion to compel, Greensfelder pointed out that the plaintiffs allege Greensfelder breached its fiduciary duty to them during its involvement in business deals, negotiations to modify those deals, the Missouri litigation, and the settlement of the Missouri litigation. Greensfelder further noted that the plaintiffs were represented by Daily, Stinson, and Padberg during the same time period. Accordingly, Greensfelder argued that the plaintiffs placed at issue the question of whether it was Greensfelder's alleged breach of fiduciary duty, or the conduct of the various attorneys who simultaneously represented the plaintiffs, that contributed to cause the plaintiffs' alleged damages.

¶ 12    Greensfelder attached the privilege logs concerning each attorney or law firm at issue to its motion to compel, although the documents themselves are not contained in the record on appeal, and it does not appear the circuit court ever conducted an *in camera* review of these documents. While this court has not counted the combined number of documents contained within the privilege logs at issue, it appears the plaintiffs' statement at oral argument for this appeal that "thousands of documents" are at issue is accurate. Each of the entries in the privilege logs designate the privilege that is being asserted for that entry by the acronym "WP" for work product, as well as "AC" for attorney-client privilege.[4] There does not appear to be a privilege

---

[3]As previously outlined, the plaintiffs allege a cause of action for breach of fiduciary duty against Greensfelder in this case, rather than one for malpractice. A footnote in Greensfelder's motion to compel acknowledges this fact, but states it chose to use "the more generic term 'malpractice' " to refer to the plaintiffs' allegations against Greensfelder. When referring to Greensfelder's arguments, we will use the term "breach of fiduciary duty."

[4]Some of the entries in the privilege logs also indicate an acronym of "AL." This court is unable to find a place in the record that defines the acronyms, but notes the other privilege that appears to have been asserted based on the pleadings and briefing is the accountant-client privilege.

log furnished by a certified public accountant (CPA). Rather, all of the documents contained within the logs seem to be sourced from the files of Daily, Stinson, and Padberg.

¶ 13 In addition to the privilege logs themselves, Greensfelder attached plaintiffs' answers to Greensfelder's interrogatories, dated May 18, 2011, to its motion to compel. In response to Greensfelder's interrogatory requesting the plaintiffs further itemize their claimed damages, the plaintiffs stated the following:

"Plaintiff claims a host of legal fees, including but not limited to [a lawsuit involving the right to utilize office space], [the Missouri] litigation, negotiation of the medical records agreement which was never finalized by [Greensfelder], as well as additional settlement expenses related to the foregoing. Plaintiff additionally claims increased malpractice expenses as a result of the loss of their Missouri business, to go with the loss of business advantages (this includes loss of economies of scale, loss of ability to effectively manage staffing issues; and lost opportunities—such as with Medtronic, Guidant/Boston Scientific, expansion to other hospitals, and addition of new technologies and procedures). Plaintiff additionally overpaid its surgeons; had [the plaintiffs] known that [Greensfelder] would torpedo as unenforceable non-competition and non-solicitation provisions which they had drafted, plaintiff[s] would not have built [their] business model in reliance on those provisions, and further, would not have incurred costs to expand personnel. Additionally, plaintiff[s] w[ere] forced to settle the underlying litigation at far less-than-fair value."

¶ 14 Also, in the plaintiffs' answers to interrogatories, when asked about all legal representation the plaintiffs had "from 1998 to present," the plaintiffs listed the following relevant attorneys and/or law firms: (1) Greensfelder—March 1995 to May 2006, (2) Stinson—

April 2006 to present, and (3) Padberg—March 2007 to January 2009. Further, Greensfelder attached an excerpt from the deposition of Trevor Axford, M.D., to its motion to compel. In this deposition excerpt, Dr. Axford testified that attorney Sharon Daily was the only attorney present on behalf of the plaintiffs during negotiations that took place between the plaintiffs and its employee doctors prior to the institution of the Missouri litigation.

¶ 15    As previously discussed, prior to any hearing on Greensfelder's motion to compel, the plaintiffs filed the operative complaint, with leave of court, on May 4, 2015. Although Greensfelder's answer and affirmative defenses to the third amended complaint do not appear in the record, the plaintiffs acknowledged that Greensfelder filed this document in the plaintiffs' memorandum in support of its motion to strike affirmative defenses, which the plaintiffs filed on June 4, 2015.[5] From the plaintiffs' memorandum in support of its motion to strike Greensfelder's affirmative defenses, this court is able to glean that Greensfelder raised several affirmative defenses to the plaintiffs' third amended complaint. First, Greensfelder alleged the settlement agreement between the parties in the Missouri litigation released Greensfelder from liability, constituted waiver, was an accord and satisfaction of any liability on the part of Greensfelder, and estopped the plaintiffs from asserting claims against Greensfelder. Second, Greensfelder alleged the negligence of the plaintiffs' attorneys leading up to and throughout the Missouri litigation and its settlement caused or contributed to cause the plaintiffs' damages. Third, Greensfelder alleged the plaintiffs filed suit outside of a two-year statute of limitations, although

---

[5]A review of the common law record in this case, as well as the recent review of common law records in other St. Clair County cases, reveals the misfiling of a myriad of documents from other cases. In this case, the plaintiffs' memorandum of law in support of its motion to strike Greensfelder's affirmative defenses states, "[Greensfelder] has filed an answer to [the] [p]laintiffs' [t]hird [a]mended [c]omplaint." However, Greensfelder's answer and affirmative defenses are not present in the record, leading this court to presume that these pleadings may have been misfiled in the common law record of another St. Clair County case.

8

according to the plaintiffs' motion to strike, Greensfelder did not specify which statute of limitations applied to the plaintiffs' causes of action.

¶ 16    On June 5, 2015, SSM filed a motion to dismiss the counts of the complaint that alleged causes of action against SSM, pursuant to section 2-619.1 of the Code of Civil Procedure (Code). 735 ILCS 5/2-619.1 (West 2014). In the motion to dismiss, SSM argued, *inter alia*, that the plaintiffs' claims against SSM were barred by the release in the Missouri litigation, dated June 29, 2007, as well as by the two-year statute of limitations and/or the six-year statute of repose for causes of action based on legal malpractice set forth in section 13-214.3 of the Code. 735 ILCS 5/13-214.3 (West 2014).[6]

¶ 17    On June 30, 2015, following a hearing on pending motions, the circuit court entered an order that, *inter alia*, denied the plaintiffs' motion to strike Greensfelder's affirmative defenses and took Greensfelder's motion to compel under advisement. On July 13, 2015, the circuit court entered an order granting Greensfelder's motion to compel, but made no findings of fact or conclusions of law. Reading this order in conjunction with Greensfelder's motion to compel, the effect of this order was to compel the plaintiffs to produce all items on Daily, Stinson, and Padberg's privilege logs. On August 3, 2015, the plaintiffs filed a motion to reconsider the circuit court's ruling on Greensfelder's motion to compel or, in the alternative, an objection to the production of privileged documents and request for an order of friendly contempt. On August 18, 2015, the circuit court entered an order denying the plaintiffs' motion to reconsider and finding the plaintiffs to be in contempt of court for failing to produce the documents at issue. On September 10, 2015, the circuit court entered an order modifying the August 18, 2015, order to

---

[6]Greensfelder also filed a motion to dismiss the then-operative complaint on August 26, 2015, based on the two-year statute of limitations set forth in section 13-214.3 of the Code. 735 ILCS 5/13-214.3 (West 2014).

reflect a $50 fine to be imposed upon the plaintiffs due to their contempt in failing to produce the documents at issue. On September 11, 2015, the plaintiffs filed a notice of appeal.

¶ 18                                    ANALYSIS

¶ 19    Because the issues on appeal concern the application of privilege rules in discovery, our standard of review is *de novo*. See *Center Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL 113107, ¶ 27 (citing *Norskog v. Pfiel*, 197 Ill. 2d 60, 71 (2001)). The plaintiffs assert that the issue on appeal is whether the circuit court properly ordered production of the documents at issue based on the plaintiffs' waiver of "the attorney-client, work product, and accountant-client privileges." However, in the remainder of their brief, the plaintiffs limit their analysis and citation to authority to the issue of whether the plaintiffs waived the attorney-client privilege as to those documents, making no argument and citing no authority specific to the work product and accountant-client privileges. Illinois Supreme Court Rule 341(h)(7) (eff. July 1, 2008) provides that the appellant's brief must contain contentions along with citations to the authorities and pages in the record relied upon. "A failure to cite relevant authority violates Rule 341 and can cause a party to forfeit consideration of the issue." *Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 23. "However, a court may consider improperly raised issues in the interest of finding a just result because Rule 341 is not a limitation on the court's jurisdiction, but an admonishment to the parties." *Id.* In the interest of judicial economy as to the resolution of the discovery issues on appeal, we choose to address the applicability of the doctrine of waiver as it applies to all three privileges that have been asserted by the plaintiffs.

¶ 20    "Both attorney-client privilege and work product are provided for in our Rule 201(b)(2)." *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 189 (1991) (citing Ill. S. Ct R. 201(b)(2) (eff. Aug. 1, 1989)). "However, they are separate and

10

distinct protections and waiver of one does not serve as waiver of the other." *Id.* The accountant-client privilege was created by statute (225 ILCS 450/27 (West 2014)) and is, therefore, also a separate and distinct privilege. Accordingly, we will separately address the plaintiffs' argument that the plaintiffs have not waived these privileges as to the documents at issue.

¶ 21                    1. "At Issue" Waiver of Attorney-Client Privilege

¶ 22    We begin with the issue of whether the documents referenced in Daily, Stinson, and Padberg's privilege logs are discoverable based on the "at issue" waiver of the attorney-client privilege. "All matters that are privileged against disclosure on the trial, including privileged communications between a party or his agent and the attorney for the party, are privileged against disclosure through any discovery procedure." Ill. S. Ct. R. 201(b)(2) (eff. July 30, 2014). "Where legal advice of any kind is sought from a lawyer in his or her capacity as a lawyer, the communications relating to that purpose, made in confidence by the client, are protected from disclosure by the client or lawyer, unless the protection is waived." *Center Partners, Ltd.*, 2012 IL 113107, ¶ 30. Although this statement regarding the privilege "suggests that only communications 'by the client' are protected from disclosure, the modern view is that the privilege is a two-way street, protecting both the client's communications to the attorney and the attorney's advice to the client." *People v. Radojcic*, 2013 IL 114197, ¶ 40 (citing Edward J. Imwinkelried, The New Wigmore: A Treatise on Evidence § 6.6.1, at 585 (2002)). " 'The purpose of the attorney-client privilege is to encourage and promote full and frank consultation between a client and legal advisor by removing the fear of compelled disclosure of information.' " *Waste Management, Inc.*, 144 Ill. 2d at 190 (quoting *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 89 Ill. 2d 103, 117-18 (1982)).

11

¶ 23    While the attorney-client privilege serves a purpose that our supreme court has characterized as " 'essential "to the proper functioning of our adversary system of justice" ' " (*Center Partners, Ltd.*, 2012 IL 113107, ¶ 30 (quoting *In re Marriage of Decker*, 153 Ill. 2d 298, 313 (1992), quoting *United States v. Zolin*, 491 U.S. 554, 562 (1989)), our supreme court has also made clear that the attorney-client privilege is not without conditions, finding that it is the privilege, not the duty to disclose, that is the exception. *Waste Management, Inc.*, 144 Ill. 2d at 190 (citing *Consolidation Coal Co.*, 89 Ill. 2d at 117-18). "Illinois adheres 'to a strong policy of encouraging disclosure, with an eye toward ascertaining that truth which is essential to the proper disposition of a lawsuit.' " *Center Partners, Ltd.*, 2012 IL 113107, ¶ 32 (quoting *Waste Management, Inc.*, 144 Ill. 2d at 190). Accordingly, "the privilege ought to be strictly confined within its narrowest possible limits." *Waste Management, Inc.*, 144 Ill. 2d at 190.

¶ 24    While our supreme court has not had occasion to find an "at issue" exception to the attorney-client privilege, it has clearly recognized that such an exception exists. See *Center Partners, Ltd.*, 2012 IL 113107, ¶ 35. Specifically, our supreme court has stated that the "at issue" exception to the attorney-client privilege may be invoked "when the client voluntarily injects into the case either a factual or legal issue, the truthful resolution of which requires examination of confidential communications, such as legal malpractice actions." *Id.* (citing *Fischel & Kahn, Ltd. v. Van Straaten Gallery, Inc.*, 189 Ill. 2d 579, 585 (2000), and *Lama v. Preskill*, 353 Ill. App. 3d 300, 305 (2004)); see also *Waste Management, Inc.*, 144 Ill. 2d at 191-93 (recognizing the "at issue" exception applies where an attorney's litigation files from underlying litigation are "relevant and at issue in the present [litigation]").

¶ 25    The plaintiffs recognize that "Illinois jurisprudence does not have a case with this exact fact pattern." Nonetheless, they point to what they characterize as "well established Illinois law,"

which they contend sets forth a standard by which a plaintiff does not waive the attorney-client privilege by placing privileged material "at issue," unless the plaintiff "actually discloses or describes, *i.e.*, in some way expressly relies upon, attorney[-]client communications in making its claim." We disagree and find the cases cited by Greensfelder—the most relevant of which is the Illinois Supreme Court's decision in *Fischel & Kahn, Ltd.*, 189 Ill. 2d 579—to be distinguishable.

¶ 26    In *Fischel & Kahn, Ltd.*, the defendant, Van Straaten Gallery, Inc. (Van Straaten), filed a counterclaim against the law firm of Fischel & Kahn, Ltd., for legal malpractice, alleging Fischel & Kahn provided Van Straaten with negligent legal advice in 1986 regarding a liability limiting contract provision the firm drafted for Van Straaten's use in its contracts with consignment artists. *Id.* at 582. According to Van Straaten's counterclaim, Fischel & Kahn's negligently drafted contract provision subjected Van Straaten to defense and settlement costs in 1990 litigation brought by several consignment artists after Van Straaten's building caught fire in 1989. *Id.* at 581. Fischel & Kahn raised several affirmative defenses, including contributory negligence, assumption of risk, and accord and satisfaction based on Van Straaten's settlement of its own lawsuit against the parties responsible for the fire. *Id.* at 582.

¶ 27    Fischel & Kahn requested discovery of the litigation files of the law firm that represented Van Straaten in the 1990 litigation, claiming that Van Straaten waived the attorney-client privilege with respect to these files by placing them at issue in its counterclaim. *Id.* at 583. According to Fischel & Kahn, these documents were placed "at issue" because, without the documents, it would impossible to determine whether and to what extent Van Straaten's loss resulted from Fischel & Kahn's alleged malpractice. *Id.* at 585. The circuit court agreed and ordered Van Straaten to produce the files, and the appellate court affirmed. *Id.* at 583.

¶ 28    The Illinois Supreme Court disagreed with the courts below and reversed the order requiring production of the documents evidencing communications between Van Straaten and the law firm that represented it in the litigation brought by the consignment artists. *Id.* at 590. The Illinois Supreme Court found the affirmative defenses that Fischel & Kahn asserted to Van Straaten's legal malpractice claim were insufficient to put the cause of Van Straaten's damages at issue, as the documents that Fischel & Kahn were seeking were documents evidencing communications between Van Straaten and its "subsequent counsel"—that is, counsel that represented Van Straaten after any alleged negligence on the part of Fischel & Kahn was complete. *Id.* at 586-87. In support of this conclusion, our supreme court cited *Jakobleff v. Cerrato, Sweeney & Cohn*, 468 N.Y.S.2d 895 (App. Div. 1983), and *Miller v. Superior Court*, 168 Cal. Rptr. 589 (Ct. App. 1980), both of which found no privilege with respect to communications between a plaintiff and counsel that plaintiff retained after the completion of the alleged malpractice on the part of the defendant lawyers.

¶ 29    In finding the attorney-client communications at issue in *Fischel & Kahn, Ltd.*, undiscoverable and not "at issue," our supreme court distinguished the facts before it from those in *Pappas v. Holloway*, 787 P.2d 30 (Wash. 1990).[7] "In that case, the [Supreme Court of Washington] held that when clients sued a former attorney for malpractice, the clients waived the attorney-client privilege with respect to all attorneys involved in the underlying litigation." *Fischel & Kahn*, *Ltd.*, 189 Ill. 2d at 588 (citing *Pappas*, 787 P.2d at 36). Our supreme court explained the distinction between *Fischel & Kahn, Ltd.*, and *Pappas* as follows:

---

[7]We find it important to note that the Illinois Supreme Court in *Fischel & Kahn, Ltd.*, distinguished the facts before it from *Pappas*, rather than rejecting the test set forth therein. *Pappas* set forth a "relevant and vital" test for the "at issue" exception to the attorney-client privilege (787 P.2d at 36 (citing *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975))), which we find to be very close to the test recognized by the Illinois Supreme Court in *Center Partners, Ltd.*, 2012 IL 113107, ¶ 35 (truthful resolution of fact or issue injected into the case by the plaintiff requires discovery).

"The [*Pappas*] court concluded that [the plaintiffs] could not bring an action against Pappas for malpractice and at the same time protect from disclosure communications made with other lawyers who also participated in the underlying litigation that gave rise to [the plaintiffs'] malpractice claim. Distinguishing *Miller* and *Jakobleff*, the *Pappas* court noted that the communications sought by Pappas took place during the time of the alleged malpractice and involved lawyers who were also representing the clients in the same matter when the malpractice allegedly occurred. [Citation.]

For these reasons, we believe that *Pappas* is distinguishable from [*Fischel & Kahn, Ltd.*]. Here, no question exists regarding who allegedly committed the malpractice complained of. *There are no allegations in van Straaten's counterclaim referring to Fischel & Kahn's conduct during the [underlying] litigation. Here, Fischel & Kahn's alleged negligence, occurring in 1986, was already complete at the time [subsequent counsel] was retained. Thus, we do not perceive the same problem here as the* Pappas *court did in determining who, among a number of different lawyers handling the same matter simultaneously, might have committed the alleged malpractice.*" (Emphasis added.) *Id.* at 588-89 (citing *Pappas*, 787 P.2d at 34-35).

¶ 30    In addition to making the above-referenced distinction, the *Fischel & Kahn, Ltd.*, court rejected the notion that materials protected by the attorney-client privilege should be discoverable in a legal malpractice action for the sole purpose of proving or disproving the reasonableness of the decision to settle or the reasonableness of the amount of the settlement in underlying litigation. *Id.* at 590. In such a case, as the *Fischel & Kahn, Ltd.*, court recognized, the protected materials would present one alternative means of proof on these issues. *Id.* However, such communications would not be required to prove these issues because in Illinois

15

the test for the reasonableness of the decision to settle, as well as the amount of the settlement, is objective rather than subjective. See *Central Mutual Insurance Co. v. Tracy's Treasures, Inc.*, 2014 IL App (1st) 123339, ¶ 56. The test for whether the decision to settle is reasonable is whether, considering the totality of the circumstances, a prudent litigant in the position of the plaintiffs would have chosen to settle. *Id.* As to the reasonableness of the amount of the settlement, the test is—considering the totality of facts surrounding the lawsuit, including the risk of going to trial—what amount a reasonable litigant in the position of the plaintiffs would have settled for on the merits of the claims of the doctors and SSM in the underlying lawsuit. See *id.*

¶ 31 Based on our analysis of existing Illinois law, as set forth above, we find that documents within Daily, Stinson, and Padberg's files, as set forth in their respective privilege logs, may contain communications that are required to be examined in order to truthfully resolve factual and legal issues that have been injected into the instant litigation by the plaintiffs. See *Center Partners, Ltd.*, 2012 IL 113107, ¶ 35. Although the plaintiffs are not asserting a cause of action for legal malpractice against Greensfelder, they are asserting a cause of action for breach of fiduciary duty based on Greensfelder's role as their prior counsel and its use of information acquired in that role in its representation of an adverse party leading up to, during, and in settlement of the Missouri litigation. An essential element of a claim for breach of fiduciary duty is damages proximately caused by the breach. *Huang v. Brenson*, 2014 IL App (1st) 123231, ¶ 44. Accordingly, the case at bar is more like *Pappas* than *Fischel & Kahn, Ltd.*, because there is an issue of whether Greensfelder, Daily, Stinson, and Padberg contributed to cause the Missouri litigation and its outcome and the relative contribution of each to the plaintiffs' damages.

16

¶ 32    In order to truthfully resolve the factual and legal issues necessary to adjudicate the causation element of the plaintiffs' claims against Greensfelder, all communications between the plaintiffs and Daily, Stinson, and Padberg that are related to the role Daily, Stinson, and Padberg played in the events leading up to and including the plaintiffs' defense of the Missouri litigation are discoverable pursuant to the "at issue" exception to the attorney-client privilege.[8] However, pursuant to the holding of our supreme court in *Fischel & Kahn*, *Ltd.*, 189 Ill. 2d at 590, documents evidencing communications between the plaintiffs and Daily, Stinson, and Padberg that are relevant solely to the reasonableness of the plaintiffs' decision to settle the Missouri litigation, and the amount of that settlement, remain privileged because, for the above-stated reasons, they are not "required to be examined in order to truthfully resolve" the causation element of the plaintiffs' claim against Greensfelder for breach of fiduciary duty. Instead, they are relevant to the issue of the reasonableness of the settlement of the Missouri litigation, which, as explained above, is subject to an objective measure of proof.

¶ 33                    2. "At Issue" Waiver of Work Product Privilege

¶ 34    We turn now to the plaintiffs' claim of work product privilege with respect to the documents in the Daily, Stinson, and Padberg privilege logs. "Material prepared by or for a party in preparation for trial is subject to discovery only if it does not contain or disclose the theories, mental impressions, or litigation plans of the party's attorney." Ill. S. Ct. R. 201(b)(2) (eff. July 30, 2014). The work product privilege "is designed to protect the right of an attorney to

---

[8]We note that the record reveals a potential issue regarding whether the plaintiffs brought their breach of fiduciary duty claim against Greensfelder within the applicable statute of limitations. If the plaintiffs were to confront this issue with a claim that the discovery rule applies to toll the statute of limitations, then documents listed on the plaintiffs' privilege log evidencing communications between the plaintiffs and Daily, Stinson, and/or Padberg that are relevant to the time frame in which the plaintiffs became aware of a cause of action against Greensfelder for breach of fiduciary duty would also fall within the "at issue" exception to the attorney-client privilege. See *Lama v. Preskill*, 353 Ill. App. 3d 300, 306-07 (2004) (citing *Pyramid Controls, Inc. v. Siemens Industrial Automations, Inc.*, 176 F.R.D. 269, 271 (N.D. Ill. 1997)).

17

thoroughly prepare his case and to preclude a less diligent adversary attorney from taking undue advantage of the former's efforts." *Waste Management, Inc.*, 144 Ill. 2d at 196 (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)). "In the typical case, material is generated in preparation for trial against an adversary who may seek disclosure of his opponent's work product." *Id.* at 197-98. It is a much different case when such material is sought in subsequent litigation and that material is either the basis of the subsequent lawsuit or the defense thereof. *Id.* at 199-200. This "at issue" exception has been recognized by our supreme court as "wholly comport[ing] with our commitment to full and fair disclosure and furtherance of the truthseeking process." *Id.* at 200.

¶ 35    In this case, the documents set forth in the plaintiffs' privilege log do not appear to be the work product of counsel for the plaintiffs in the instant litigation.[9] Rather, Greensfelder is seeking the work product of Daily, Stinson, and Padberg, which represented the plaintiffs at various times leading up to and during the Missouri litigation, the same time period and litigation in which the plaintiffs allege Greensfelder's breaches of fiduciary duty caused them the loss of their business. We find that the work product of Daily, Stinson, and Padberg relating to these matters fits squarely within the "at issue" exception to the work product doctrine because it is the basis of Greensfelder's defense in this subsequent litigation that these attorneys played a role in causing the plaintiffs' damages. Greensfelder's defense to the plaintiffs' claim that Greensfelder's breach of fiduciary duty caused these damages centers around the role Daily, Stinson, and Padberg's representation of the plaintiffs may have played in the institution of the Missouri litigation and its outcome. Accordingly, we find to be discoverable all documents on Daily, Stinson, and Padberg's privilege logs that contain work product of Daily, Stinson, and Padberg in their representation of the plaintiffs with regard to negotiations with SSM, as well as

_____

[9]If there are any items in the privilege logs that do reflect work product of the attorneys representing the plaintiffs in the instant litigation, the "at issue" exception would not extend to those items.

18

negotiations with the doctors involved in the period of time leading up to the Missouri litigation, during the Missouri litigation, and during its settlement.

¶ 36            3. Attorney-Client Communications Containing Work Product

¶ 37    We note virtually all of the entries in the Daily, Stinson, and Padberg privilege logs claim to be protected from discovery by both the attorney-client and work product privileges. However, a review of a random selection of the entries contained in the logs reveals, in many cases, the document described therein does not appear to meet the definition of one or the other of these privileges.[10] Nevertheless, we recognize there are many instances when a communication between attorney and client would include mental impressions of the attorney, and a number of the documents may, in fact, contain both types of information. Under the modern view, such communications from attorney to client are protected by the attorney-client privilege (see *Radojcic*, 2013 IL 114197, ¶ 40), as well as the work product privilege. See Ill. S. Ct. R. 201(b)(2) (eff. July 30, 2014).

¶ 38    As set forth in detail above, the "at issue" exception to the work product privilege, when considered in the context of subsequent litigation brought by a client, is broader than the "at issue" exception to the attorney-client privilege. See *Center Partners, Ltd.*, 2012 IL 113107, ¶ 35; accord *Waste Management, Inc.*, 144 Ill. 2d at 199-200. While the "at issue" exception to the work product privilege in subsequent litigation only requires the privileged material be the basis of a claim or defense raised in the subsequent suit brought by the client, the "at issue" exception to the attorney-client privilege can be invoked only if the privileged material is required to truthfully resolve a factual or legal issue in the subsequent suit brought by the client. *Id.* Accordingly, the question arises of which "at issue" exception applies to attorney-client

---

[10]We will address this problem later in this opinion by directions to the parties and the court on remand.

19

communications containing work product. We hold the test for the "at issue" exception to the attorney-client privilege applies to such documents.

¶ 39                                  4. Accountant-Client Privilege

¶ 40    We now briefly turn to the plaintiffs' assertion of the accountant-client privilege in various entries on the Daily, Stinson, and Padberg privilege logs. The accountant-client privilege was created by section 27 of the Illinois Public Accounting Act (225 ILCS 450/27 (West 2014)), which provides as follows:

> "Confidentiality of licensee's and registrant's records. A licensed or registered CPA shall not be required by any court to divulge information or evidence which has been obtained by him in his confidential capacity as a licensed or registered CPA. This Section shall not apply to any investigation or hearing undertaken pursuant to this Act."

¶ 41    The plain language of this statute, set forth above, provides for protection of information provided to a certified public accountant (CPA). Accordingly, section 27 does not apply if information is not obtained by an accountant in his capacity as a licensed or registered CPA. *Brunton v. Kruger*, 2015 IL 117663, ¶ 18. There is nothing in the record to show that Daily, Stinson, or Padberg are, in addition to attorneys and/or law firms, CPAs and/or accounting firms. Unless this is the case, the accountant-client privilege does not extend to any of the items in the Daily, Stinson, and Padberg privilege logs.

¶ 42                                  5. "Subject Matter Waiver"

¶ 43    We briefly address Greensfelder's argument that all of the documents in Daily, Stinson, and Padberg's files are discoverable because the "subject matter waiver" of the attorney-client privilege applies. According to our supreme court, subject matter waiver occurs when a client offers his own or his attorney's testimony as to a " '*specific communication*' " to the attorney.

20

(Emphasis in original.) *Center Partners, Ltd.*, 2012 IL 113107, ¶ 37 (quoting 8 John Henry Wigmore, Evidence § 2327, at 638 (McNaughton rev. ed. 1961)). Such an offering waives the privilege as to all other communications to the attorney on the same matter. *Id.* On the record before us, we find the subject matter waiver exception to the attorney-client privilege is wholly inapplicable to the documents at issue. Here, the plaintiffs listed Daily, Stinson, and Padberg in their answers to Greensfelder's interrogatories as persons with knowledge of the facts and circumstances surrounding the plaintiffs' claims. However, the plaintiffs have not disclosed these attorneys and/or law firms on a list of witnesses expected to testify at trial, and there is no evidence they have in any way offered Daily, Stinson, or Padberg's testimony as to any of the communications the plaintiffs are claiming as privileged. For these reasons, the "subject matter waiver" does not apply.

¶ 44                6. Status of Orders Appealed From and Directions on Remand

¶ 45    Having set forth the standards for applying the "at issue" exception to documents protected by the attorney-client privilege and the work product privilege, as well as the inapplicability of the accountant-client privilege to information contained within the files of an attorney, we turn to the orders on appeal. The circuit court's July 13, 2015, order granted Greensfelder's motion to compel, the effect of which was to compel the plaintiffs to produce all items on Daily, Stinson, and Padberg's privilege logs. The August 18, 2015, order of the circuit court denied the plaintiffs' motion to reconsider and found the plaintiffs to be in contempt of court for failing to produce the documents at issue. The September 10, 2015, order of the circuit court imposed a $50 fine upon the plaintiffs for failing to produce the documents. Based on our detailed analysis of the applicability of the asserted privileges, and our review of the privilege logs themselves, it appears that some, but not necessarily all, of the documents set forth in the

21

privilege logs may be discoverable. Accordingly, we vacate all three orders of the circuit court and remand with the following directions.

¶ 46    First, the plaintiffs must, based upon the analysis set forth in this opinion, reconsider their position on all of the documents listed in the privilege logs and determine which documents, if any, they must produce to Greensfelder, and which documents, if any, they continue to maintain are privileged. With regard to those documents, if any, that the plaintiffs continue to maintain are privileged, the plaintiffs must produce a new privilege log that conforms to the requirements of Illinois Supreme Court Rule 201(n) (eff. July 30, 2014). Pursuant to Rule 201(n), the privilege logs must describe the nature of the documents and list the *exact* privilege claimed. *Id.* Accordingly, only communications between attorney and client that also contain the mental impressions of the attorney should list both the attorney-client and work product privileges, and the logs should contain only those documents for which the plaintiffs can make a good faith argument, based on the law set forth in this opinion, that the "at issue" exception to the relevant privilege does not apply.

¶ 47    Once the plaintiffs have produced those documents that, based on our opinion, are required to be produced, as well as a new privilege log, Greensfelder may move the circuit court to compel the production of any withheld documents to which it has a *bona fide* dispute regarding the applicability of any stated privilege on the privilege log. The circuit court will then rule on the applicability of the stated privilege based upon a review of the privilege log, or, if requested and/or deemed necessary, an *in camera* review of the disputed documents, in light of this opinion. In so doing, we note that the circuit court's broad powers in regulating discovery allow it to properly sanction either party if that party fails to comply with the directions set forth herein or any subsequent order of the circuit court. See Ill. S. Ct. R. 201(c) (eff. July 30, 2014).

22

¶ 48                              CONCLUSION

¶ 49    For the foregoing reasons, we vacate the July 13, 2015, August 18, 2015, and September 10, 2015, orders of the circuit court of St. Clair County and remand with directions that the plaintiffs produce all documents listed in its privilege logs that are discoverable in light of our opinion. Further, should the plaintiffs, in good faith, maintain privilege as to any of the documents in its privilege logs based on the principles set forth in this opinion, the plaintiffs shall submit a new privilege log that conforms to the requirements of Illinois Supreme Court Rule 201(n) (eff. July 30, 2014). Finally, we direct that in the event the parties are not able to resolve all issues between them with regard to the documents then at issue, and Greensfelder files a new motion to compel, the circuit court shall evaluate the plaintiffs' privilege log, conduct an *in camera* review of the disputed documents if needed, and issue an order adjudicating their discoverability in light of our opinion.

¶ 50    Vacated and remanded with directions.

¶ 51    JUSTICE CHAPMAN, dissenting:

¶ 52    I respectfully dissent. I disagree with the conclusion reached by my colleagues for two reasons. First, I disagree with their conclusion that the instant case is more like *Pappas* than *Fischel & Kahn, Ltd.* Second, I believe their framing of the at-issue exception to attorney-client privilege is overly broad.

¶ 53    As my colleagues point out, the Illinois Supreme Court has yet to directly address the scope of the at-issue exception to attorney-client privilege. However, as they also note, the court *has* recognized that the exception exists. See *Center Partners, Ltd.*, 2012 IL 113107, ¶ 35.

23

Typical examples of the at-issue waiver recognized in other jurisdictions include cases where a party sues a former attorney for malpractice and cases where a party asserts as an affirmative defense that the party relied on the advice of counsel. See *Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.*, 32 F.3d 851, 863 (3d Cir. 1994).

¶ 54 Both *Pappas* and *Fischel & Kahn, Ltd.*, involved the widely recognized principle that a party who sues a former attorney for malpractice implicitly waives the attorney-client privilege with respect to that attorney's representation. The question facing both courts was under what circumstances this waiver extends to other attorneys. See *Pappas*, 787 P.2d at 34; *Fischel & Kahn, Ltd.*, 189 Ill. 2d at 585. Although neither case is precisely analogous to the case before us, I believe *Pappas* is distinguishable, and I believe that our supreme court's rationale in *Fischel & Kahn, Ltd.*, supports the conclusion that the at-issue exception is not applicable here.

¶ 55 As noted in the majority opinion, the *Pappas* court held that "when clients sued a former attorney for malpractice, the clients waived the attorney-client privilege with respect to all attorneys involved in the underlying litigation." *Fischel & Kahn, Ltd.*, 189 Ill. 2d at 588 (citing *Pappas*, 787 P.2d at 36). In finding the same result to be warranted here, I believe my colleagues overlook the context in which the *Pappas* court reached this conclusion.

¶ 56 The defendants in *Pappas* were sued in three different lawsuits over the sale of cattle infected with brucellosis. *Pappas*, 787 P.2d at 32. They hired multiple attorneys, including the plaintiff, to represent them in those lawsuits. *Id.* The three actions were later consolidated, and one of the other attorneys withdrew as counsel. *Id.* One month before trial, the plaintiff also withdrew as counsel, and the defendants hired an additional attorney to help their remaining counsel bring the case to trial. Subsequently, the plaintiff sued the defendants for unpaid attorney fees. *Id.* The defendants filed a counterclaim alleging malpractice. *Id.* at 32-33. The plaintiff filed

third-party claims against all other attorneys who represented the defendants in the underlying litigation. *Id.* at 33.

¶ 57   The plaintiff filed a motion to compel the third-party defendant attorneys to produce documents relating to the underlying litigation. *Id.* The third-party defendants objected, arguing that the documents were protected by attorney-client privilege. The trial court granted the motion to compel, finding that the original defendants waived the privilege with respect to all attorneys who represented them in the underlying action by filing a claim for malpractice against one of those attorneys. *Id.*

¶ 58   On appeal, the defendants acknowledged that their malpractice claim waived the privilege between themselves and the plaintiff. They argued, however, that "this waiver should not automatically extend to include the third-party defendants as well." *Id.* at 34. Before rejecting this claim, the *Pappas* court expressed concern over "the danger of making illusory the attorney-client privilege in legal malpractice actions." *Id.* at 35. The court found that in spite of this concern, the facts before it justified a finding of implied waiver as to all attorneys involved in representing the defendants in the underlying litigation. *Id.* at 36.

¶ 59   The *Pappas* court reached this conclusion by applying the three-part test developed by a federal district court in *Hearn*, 68 F.R.D. 574. Under that test, the at-issue exception applies if (1) the party asserting the privilege takes some affirmative step, such as filing a lawsuit or asserting an affirmative defense; (2) by doing so, that party makes the privileged information "relevant to the case"; and (3) the privileged information is "vital" to the opposing party. *Id.* at 581. The *Hearn* court explained that communications are relevant for purposes of the second part of the test if they are "not incidental to the case; they inhere in the controversy itself." *Id.* at 582.

25

¶ 60    In applying the *Hearn* test to the facts before it, the *Pappas* court found that the first two elements were satisfied because the defendants' affirmative step of filing a counterclaim alleging malpractice "caused malpractice to become an issue" in the case. *Pappas*, 787 P.2d at 36. The court noted that the plaintiff's third-party claims against the other attorneys did not interject any new issues into the case because they were nearly identical to the defendants' counterclaim. *Id.* The court found that the third element of the *Hearn* test was met because allowing the defendants to claim the privilege "would effectively deny [the plaintiff] an adequate defense." *Id.* The court explained that resolution of the malpractice issue "will necessarily involve information communicated between [the other] attorneys and the Holloways." *Id.* at 37. The court emphasized that this was "particularly true given that Pappas was not the attorney who actually tried the case, nor did he have any part in its eventual settlement." *Id.*

¶ 61    It is in this regard I believe the instant case stands in stark contrast to *Pappas*. There, the question of the plaintiff's acts or omissions in the underlying litigation was inextricably linked to the performance of the other attorneys who represented the defendants in the same litigation. The same cannot be said of this case. Our supreme court distinguished *Pappas* from the case before it in *Fischel & Kahn, Ltd.*, on precisely this basis. The court noted that in *Fischel & Kahn, Ltd.*, unlike in *Pappas*, there was "no question *** regarding who allegedly committed the malpractice complained of." *Fischel & Kahn, Ltd.*, 189 Ill. 2d at 589. Here, likewise, there is no question concerning who committed the alleged acts of fraud or the alleged breaches of Greensfelder's fiduciary duty to the plaintiffs. I believe this is the crux of the case.

¶ 62    Two more distinctions drawn by the *Fischel & Kahn, Ltd.*, court bear discussion. First, the court noted that Van Straaten made no allegations about its former counsel's conduct during the underlying fire litigation. *Id.* Here, the plaintiffs *have* alleged misconduct by Greensfelder

26

during the Missouri litigation. However, I do not believe this is a significant difference under the facts of this case. In *Fischel & Kahn, Ltd.*, the plaintiff law firm continued to represent Van Straaten while the underlying litigation was proceeding. See *id.* at 581. It was therefore important for the supreme court to note that nothing that firm's attorneys did on behalf of Van Straaten in that litigation was at issue. Here, Greensfelder and subsequent counsel never represented the plaintiffs simultaneously in the same matter, as the various attorneys did in *Pappas*. See *id.* at 589 (emphasizing this distinction). The fact that the alleged conduct at issue was not complete before the Missouri litigation began does not change this crucial fact.

¶ 63    The final distinction drawn by the supreme court concerned the purpose for which the privileged materials were relevant. The court found that the only question on which the privileged information sought in that case was relevant was the question of damages. See *id.* at 589-90. The court explained that the privileged communications with subsequent counsel were not vital to Fischel & Kahn on this question because the reasonableness of the settlement could be determined through other evidence. *Id.* My colleagues conclude that this factor makes this case more similar to *Pappas* than *Fischel & Kahn, Ltd.*, because the question at issue here is the proximate cause of the plaintiffs' damages rather the reasonableness of the settlement. I disagree. There, Fischel & Kahn argued that the privileged documents were necessary in order "to determine whether and to what extent van Straaten's alleged loss resulted from Fischel & Kahn's alleged" conduct. *Id.* at 585. That is precisely the argument Greensfelder makes here. Greensfelder contends that the requested material might help it demonstrate that the settlement amount was adversely impacted by some flaw in how the plaintiffs' subsequent attorneys handled the Missouri litigation rather than by its own alleged malfeasance. This is, in essence, a claim that the plaintiffs accepted a settlement that was objectively unreasonable. As my

colleagues recognize, privileged information is not necessary to prove this. See *id.* For these reasons, I believe that the instant case is more similar to *Fischel & Kahn, Ltd.*, than *Pappas*.

¶ 64    The second reason I disagree with the conclusion reached by my colleagues is that I believe they apply the at-issue exception too broadly. In *Center Partners, Ltd.*, our supreme court explained in *dicta* that under the at-issue exception, a client implicitly waives the privilege if the client "voluntarily injects into the case either a factual or legal issue, the truthful resolution of which requires examination of confidential communications." *Center Partners, Ltd.*, 2012 IL 113107, ¶ 35 (citing *Fischel & Kahn, Ltd.*, 189 Ill. 2d at 585). However, because that case involved subject matter waiver of the attorney-client privilege, another type of implied waiver, the court did not consider the scope of the at-issue exception or formulate a test for its application. See *id.* ¶¶ 37-62. I thus disagree with my colleagues' interpretation of this language as approving or recognizing a test similar to that applied by the Washington Supreme Court in *Pappas*.

¶ 65    More importantly, I believe the majority holding expands the at-issue exception beyond the limits approved by the courts in *Hearn* and *Pappas*. Neither the second nor third requirements of the *Hearn* test are satisfied. Communications between the plaintiffs and their subsequently-retained attorneys are not inherently relevant to their claims that Greensfelder breached its fiduciary duty and committed fraud. See *Hearn*, 68 F.R.D. at 582. Further, the defendants can demonstrate that their alleged misconduct did not cause all or part of the plaintiffs' alleged loss by showing that the settlement was objectively unreasonable. Thus, the privileged information is not vital to their defense. See *id.* at 581.

¶ 66    It is important to note that both the *Hearn* and *Pappas* courts applied the at-issue exception narrowly. The *Hearn* court explicitly stated that its test should apply only in "narrow

28

confines" in order to balance the important interest served by the attorney-client privilege with the opposing party's interest in vindicating his rights. *Id.* at 582. Similarly, the *Pappas* court recognized the validity of the concerns raised by other courts over the dangers of applying the at-issue exception too broadly, but found it to be warranted under the specific facts before it. See *Pappas*, 787 P.2d at 35-36. In both cases, the privileged documents were central to issues raised by the parties asserting privilege. *Pappas* involved a claim of malpractice against one of four attorneys who served as co-counsel in the same underlying suit. The defendants in *Hearn* asserted the affirmative defense of good faith—in other words, they alleged that they acted in accordance with what they believed to be the applicable law. *Hearn*, 68 F.R.D. at 581 n.5 (citing *Wood v. Strickland*, 420 U.S. 308, 321-22 (1975)). I do not believe either *Pappas* or *Hearn* supports the majority's finding of at-issue waiver in this case.

¶ 67    It is also worth noting that numerous courts—including the Second District of the Illinois Appellate Court—have been critical of both *Pappas* and *Hearn* for carving out too broad an exception to the attorney-client privilege. See, *e.g.*, *In re Estate of Wright*, 377 Ill. App. 3d 800, 805-06 (2007); *In re County of Erie*, 546 F.3d 222, 227 (2d Cir. 2008); *Rhone-Poulenc Rorer, Inc.*, 32 F.3d at 863-64; *Succession of Smith v. Kavanaugh, Pierson & Talley*, 513 So. 2d 1138, 1145 (La. 1987). Notably, the Second District criticized *Hearn* "for focusing on the need of the party seeking the information rather than the policy that the privilege serves." *In re Estate of Wright*, 377 Ill. App. 3d at 805. Although our supreme court did not reject *Pappas* or *Hearn* in *Fischel & Kahn, Ltd.*, it also expressed similar concerns. The court explained that allowing Fischel & Kahn "to invade the attorney-client privilege with respect to subsequently retained counsel" under the facts of that case "would render the privilege illusory." *Fischel & Kahn, Ltd.*, 189 Ill. 2d at 586.

¶ 68    I believe the same reasoning is warranted in this case. The attorney-client privilege serves the crucial purpose of encouraging full and frank discussions between attorneys and their clients. *Id.* at 584-85. Expanding the implied waiver of the at-issue exception beyond the limits approved in *Pappas* and *Hearn* undermines this important protection. Proximate cause is always an issue. If a defendant may invade the privilege any time a plaintiff claims damages related to the settlement of subsequent litigation merely by asserting that subsequently retained counsel may have caused or contributed to the loss, the privilege would be rendered illusory in such cases. See *id.* at 587-88. I would find that the plaintiffs did not waive the attorney-client privilege.

¶ 69    For these reasons, I would reverse the orders of the trial court.

2018 IL App (5th) 150384

NO. 5-15-0384

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| BILL DAILY, M.D., and CARDIOTHORACIC SURGERY ASSOCIATES, P.C., | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 09-L-405 |
| GREENSFELDER, HEMKER & GALE, P.C.; SSM HEALTHCARE CORPORATION; and SSM HEALTHCARE ST. LOUIS, | ) ) ) ) ) | Honorable Vincent J. Lopinot, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

| | |
|---|---|
| **Opinion Filed:** | February 7, 2018 |

_____

| | |
|---|---|
| **Justices:** | Honorable James R. Moore, J. |
| | Honorable Thomas M. Welch, J., concurred |
| | Honorable Melissa A. Chapman, J., dissented |

_____

| | |
|---|---|
| **Attorneys for Appellants** | Clyde L. Kuehn, 120 W. Main Street, Suite 122, Belleville, IL 62220; Christopher J. Petri, Byron, Carlson, Petri & Kalb, LLC, 411 St. Louis Street, Edwardsville, IL 62025 |

_____

| | |
|---|---|
| **Attorneys for Appellees** | Ted W. Dennis, Michael P. Murphy, Freeark, Harvey & Mendillo, P.C., 115 W. Washington Street, P.O. Box 546, Belleville, IL 62222-0546; Michael L. O'Donnell, Carolyn J. Fairless, Erin F. Frohardt, Wheeler, Trigg, O'Donnell, LLP, 370 Seventeenth Street, Suite 4500, Denver, CO 80202 (attorneys for Greensfelder, Hemker & Gale, P.C.); Alphonse J. Pranaitis, David A. Schott, Rynearson, Suess, Schnurbusch & Champion, LLC, 107 Southpointe Drive, Edwardsville, IL 62025 (attorneys for SSM Healthcare Corporation and SSM Healthcare St. Louis) |

_____